1999-NMCA-039

975 P.2d 392

**Gina Marie SISNEROZ, Individually, and on behalf of Pier Angelin G., a minor, Petitioner–Appellant,**

v.

**Ray D. POLANCO, Respondent–Appellee.**

**No. 19371.**

Court of Appeals of New Mexico.

Feb. 12, 1999.

Patsy D. Reinard, Socorro, for Appellant.

John R. Gerbracht, Socorro, for Appellee.

## OPINION

BOSSON, Judge.

{1}   This appeal involves waiver of retroactive child support under the Uniform Parentage Act, NMSA 1978, §§ 40–11–1 to –23 (1986, as amended through 1997) (UPA), and the applicability of the UPA to a claim for such child support when paternity has not been denied by the father.  We also address a mother's standing to claim reimbursement for pregnancy and birthing costs when those costs have been paid by her parents who are not parties to the lawsuit.  We agree with the trial court's decision to apply the UPA to the facts of this case.  However, we hold that the trial court erred in concluding that Mother (1) had waived retroactive child support, and (2) did not have standing to seek reimbursement for pregnancy and birthing expenses.  We also conclude that the trial court erred in awarding only $600 in attorney's fees against unpaid fees of $1890.  Accordingly, we . reverse and remand to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

{2}   Petitioner Sisneroz (Mother) and Respondent Polanco (Father) are the biological parents of a girl (Child) born on December 20, 1984.  Mother and Father never married.  Prior to the present lawsuit, Father's paternity had not been legally adjudicated nor was any court order ever entered against Father for child support.  Although paternity of Child had not been legally established, Father and Child visited each other occasionally, and Father never denied paternity.  Father gave Mother $50 for Child on one occasion, and from time to time he gave Child small amounts of money for her personal use, he bought her Christmas gifts, and school clothes on two occasions, and since 1990 Father included Child under his medical and dental insurance.

{3} From January 1986, when Child was a little over a year old, until September 1992, Mother received Aid to Families with Dependent Children (AFDC) from the New Mexico Human Services Department (HSD) for Child's support. During this time Mother relied on the promise of the HSD Child Support Enforcement Division (CSED) to bring a paternity action against Father and obtain child support from him. Mother continued to rely on CSED to do this even after she discontinued receiving AFDC. Mother testified that she filled out forms, provided answers to CSED questions, told CSED that she wanted to proceed with the case, and gave CSED "everything they asked for" for them to obtain support from Father. CSED was unsuccessful in securing child support from Father and eventually discontinued its efforts. Ultimately, Mother decided to bring her own action for paternity and support when she learned that the CSED had closed her case.

{4} Mother, on behalf of Child, filed a petition on January 9, 1997 for paternity and support, and individually on her own behalf, she sought to recover the costs of her pregnancy and birthing expenses. Father admitted paternity of Child in his formal response to the petition. After a hearing, the trial court found that Mother had waived retroactive child support for the entire period prior to filing this petition. The court also concluded that Mother did not have standing to seek reimbursement for pregnancy and birthing expenses. The court awarded Mother only a small portion of her attorney's fees incurred in this action.

## DISCUSSION

### Standard of Review

■ {5} In reviewing Mother's challenges to the trial court's findings of fact and conclusions of law, we determine whether the law has been correctly applied to the facts, viewing the evidence presented at trial and all reasonable inferences drawn therefrom in the light most favorable to the prevailing party. See McCurry v. McCurry, 117 N.M. 564, 567, 874 P.2d 25, 28 (Ct.App.1994). Although the trial court found that Mother had waived child support for all the years prior to filing her petition, it did not make any factual findings to support its legal conclusion of waiver.

### The Uniform Parentage Act

■ {6} We first consider whether the UPA applies to fathers who do not deny paternity of their children but never formally acknowledge their paternity or assume legal responsibility for their support. At trial Father argued that Mother's action was not really a paternity case because he had never denied paternity. He took the position that the UPA was inapplicable to him, and thus, he could only be sued for prospective child support, no differently from the father of a child born of married parents. A paternity action under the UPA provides for the remedy of child support retroactive to the date of a child's birth, unlike suits brought for support in which paternity is not at issue in which courts can award child support only from the date of the petition. Compare § 40-11-15(C) (stating that the court shall order retroactive child support) with NMSA 1978, §§ 40-4-11 to -11.2 (1988, as amended through 1995) (determining prospective award of child support in dissolution of marriage cases).

{7} At trial Mother argued that Father's paternity of Child, although not denied, had never been adjudicated or formally acknowledged, and therefore she was forced to bring this action to establish paternity and secure an award of retroactive child support under the UPA. She also argued that equal protection principles support the right to retroactive child support in this case. See Padilla v. Montano, 116 N.M. 398, 402-06, 862 P.2d 1257, 1261-65 (Ct.App.1993) (holding that the equal protection clause prohibits a trial court from withholding from children born out-of-wedlock the right to financial support during their entire minority). The trial court rejected Father's invitation to treat more favorably those men who informally acknowledge the paternity of their children than those who do not. The court concluded that "there is a legal right to claim retroactive child support in this case," subject to the defenses of waiver and offset for certain payments allegedly made.

{8} We agree with the trial court and with Mother's argument on this issue. Children born to married parents and children born out-of-wedlock have an equal interest in financial support during their entire minority. *See id.; Stringer v. Dudoich,* 92 N.M. 98, 100, 583 P.2d 462, 464 (1978). When a child is born of married parents, the husband's paternity of the child is presumed. As a result, the child born to married parents has a legal right to support from both parents. *See State ex rel. Terry v. Terry,* 80 N.M. 185, 187, 453 P.2d 206, 208 (1969). Children born out-of-wedlock do not benefit from the legal presumption of paternity that children of married parents enjoy. *See Padilla,* 116 N.M. at 405, 862 P.2d at 1264. Children born out-of-wedlock must first adjudicate paternity before a court can enforce their interest in child support, and this is likely one reason why the UPA statute of limitations runs up to twenty-one years from the date of the child's birth. *See id.* at 403, 862 P.2d at 1262; *State ex rel. Salazar v. Roybal,* 1998–NMCA–093, ¶ 8, 125 N.M. 471, 963 P.2d 548 (holding that adult son may pursue retroactive child support under the UPA).

{9} The UPA authorizes retroactive child support against a father, but the Act does not expressly create any purported defense for putative fathers who may not deny, but never formally admit their paternity, and who do not assume legal responsibility for their actions. Father never took the necessary formal steps to acknowledge paternity and accept its consequences under law. Before this lawsuit·was initiated, Father and Child had no legal relationship incident to which the law could confer or impose rights and obligations. *See* § 40–11–2 (defining "parent and child relationship" as used in the UPA). The UPA provides fathers with various means of establishing legal paternity, including an attempt to enter into marriage with the mother after the child is born *and* (1) a father's acknowledgment of paternity in writing with the vital statistics bureau of the public health division of the department of health; or (2) being named on the child's birth certificate by consent; or (3) obligating oneself to support the child under a written voluntary promise or court order. *See* § 40–11–5(A)(3). Father in this case never pursued any of these alternatives set forth in the UPA to establish a presumption of paternity. The placement of Father's name on Child's birth certificate, without his consent, does not create a legal presumption of paternity. *See* § 40–11–5(A)(3)(b).

{10} It is not enough that Father admitted paternity, years after the fact, in his response to the petition in this lawsuit, nor is it sufficient that a parent-child relationship had been informally acknowledged. Under these facts, a court of law could not have compelled Father to support Child financially; a court could not have acted until "an interested party" established Father's paternity and legal liability for support. *See* § 40–11–17(A) (stating that if paternity is declared or a duty of support has been acknowledged or adjudicated under the UPA, the obligation of the father may be enforced in the same or other proceeding by any interested party). Mother attempted unsuccessfully for years to adjudicate Father's paternity through the CSED, and Father's liability for child support was never legally established. Under the facts of this case, the trial court correctly concluded that Mother's claim fell within the scope of the UPA.

*Waiver of Support*

{11} The trial court held that Mother had waived her statutory right to retroactive child support under the UPA. Father argues that Mother intentionally relinquished her right to retroactive child support because (1) she knew she had a right to retroactive support, and (2) she never asked Father for that support until filing this lawsuit. No New Mexico decision has addressed waiver of retroactive child support under the UPA. Mother asks us to rule as a matter of law that she could not bind her child to a waiver of retroactive child support without court appointment of a guardian ad litem and some measure of judicial approval. We do not rule on this argument because even if we assume, arguendo, that Mother could waive retroactive support for her Child, we nonetheless decide that Mother did not waive support in this case because this record does not support proof of waiver.

{12} This Court has recognized two kinds of common-law waiver in the child support context. *See McCurry,* 117 N.M. at 567–68, 874 P.2d at 28–29. First, waiver consists of " 'a known legal right, relinquished for consideration, where such legal right is intended for the waivor's sole benefit and does not infringe on the rights of others.' " *Id.* at 567, 874 P.2d at 28 (quoting *Brannock v. Brannock,* 104 N.M. 385, 386, 722 P.2d 636, 637 (1986) (*Brannock I* )). Under certain circumstances, a second type of waiver sounding in equity and based on acquiescence, may arise "where the evidence shows the existence of an agreement ... supported by consideration, and where the agreement has been acquiesced in over a period of time under circumstances giving rise to estoppel." *Id.* at 568, 874 P.2d at 29 (citing *Arnold v. Krewson,* 834 S.W.2d 229, 232 (Mo.Ct.App.1992)).

{13} Our Supreme Court has previously stated that, " '[i]n no case will a waiver be presumed or implied, contrary to the intention of the party whose rights would be injuriously affected thereby, unless, by his conduct, the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to.' " *Id.* at 567, 874 P.2d at 28 (quoting *Ed Black's Chevrolet Ctr., Inc. v. Melichar,* 81 N.M. 602, 604, 471 P.2d 172, 174 (1970)). Where there is no proof of an express agreement, an enforceable waiver cannot be inferred unless there are unequivocal acts or conduct showing an intent to waive. See *id.* In this case, there is no evidence of such an agreement, and there is no conduct which unequivocally demonstrates an intent to waive on the part of Mother.

{14} In addition, Mother received no consideration from Father in exchange for any purported relinquishment of retroactive child support. *Cf. Williams v. Williams,* 109 N.M. 92, 94, 96–99, 781 P.2d 1170, 1172, 1174–77 (Ct.App.1989) (mother waived right to child support arrearages that had accrued by refusing the father court-ordered visitation); *Brannock v. Brannock,* 104 N.M. 416, 418, 722 P.2d 667, 669 (Ct.App.1985) (custodial parent agreed that she would not take the children's father to court for court-ordered

past due child support if he paid prospective child support), *aff'd,* 104 N.M. at 387, 722 P.2d at 638. The trial court made no finding that Mother had relinquished retroactive child support for consideration, and Father presented no such evidence.

{15} Retroactive child support is for the benefit of a child as well as for that child's custodian. *See Brannock I,* 104 N.M. at 386, 722 P.2d at 637 (recognizing the dual nature of child support arrearages). A parent's waiver of a child's interest in child support may infringe upon the child's rights. *See id.* This Court held in *Williams,* 109 N.M. at 99, 781 P.2d at 1177 that waiver should not be found where it infringes upon the rights of other, innocent parties. *See also McCurry,* 117 N.M. at 568, 874 P.2d at 29. Father has the burden of persuasion to show that a waiver of retroactive child support would not infringe upon Child's right to financial support throughout her entire minority. *Cf. id.* (stating the noncustodial father had the burden to show that his reductions of child support payments did not affect the best interests of his other minor children). The court made no findings that waiver would not infringe upon Child's rights and Father never requested any such findings nor presented any evidence to that effect. Thus, Father failed to establish the elements of intentional waiver: (1) a known legal right; (2) relinquished for consideration; and (3) where waiver does not infringe on the rights of others.

{16} The equitable defense of waiver by acquiescence "arises when a person knows he is entitled to enforce a right and neglects to do so for such a length of time that under the facts of the case the other party may fairly infer that he has waived or abandoned such right." *McCurry,* 117 N.M. at 568, 874 P.2d at 29. At its core, the defense of acquiescence is based on estoppel. Waiver by acquiescence requires proof of an express or implied agreement, and a trial court should not infer acquiescence from doubtful or ambiguous acts. *See id.*

{17} The trial court made no finding of estoppel or detrimental reliance by Father.

Father presented no such evidence at trial. Father presented no evidence of unequivocal acts or conduct showing an intent, on Mother's part, to waive retroactive child support and his reliance thereon. Father's evidence consisted of Mother's failure to ask Father directly for child support, and the fact that Father on occasion asked Child's maternal grandparents if Child needed anything and was told that Child was doing fine. Mother did not mislead Father into the honest belief or reliance that she had waived child support. There was no evidence that Mother affirmatively told Father she did not want his money or that he could not visit Child. *Cf. Williams*, 109 N.M. at 94, 781 P.2d at 1172 (where the mother told the father that she did not want his money or for him to ever see their child). To the contrary, Mother facilitated a relationship between Father and Child and sought to establish paternity and obtain support through the CSED. The fact that Mother waited for CSED to pursue child support against Father is not evidence of acquiescence. The court made no findings of acquiescence.

{18} For all the foregoing reasons, we reverse the trial court's decision that Mother waived retroactive child support under the UPA. We remand for a determination of child support pursuant to the New Mexico Child Support Guidelines. *See* § 40–11–15(C).

### The Legal Definition of Child Support

{19} Father argues the trial court correctly concluded that he provided support to Child through his fifty-dollar payment to Mother, his gifts to Child, and his inclusion of Child in his medical insurance policy. Father notes that the medical coverage was required under the Mandatory Medical Support Act (MMSA), NMSA 1978, § 40–4C–2 (1990). We hold, as a matter of law, that Father's payments do not satisfy the requirements of the child support guidelines.

{20} Under the UPA, Section 40–11–15(C), child support is calculated pursuant to the child support guidelines at Sections 40–4–11 to –11.2 and NMSA 1978, Section 40–4–11.3 (1989). "The cost of providing medical and dental insurance for the [child] of the parties … shall be paid by each parent in proportion to his income, *in addition to the basic obligation.*" Section 40–4–11.1(H) (emphasis added). Father's medical coverage costs for Child are in addition to, rather than in lieu of, child support mandated by our guidelines. *See id.* (providing the method for determining basic child support at table "A," "Instructions for Worksheet A," and additionally considering insurance premiums at line 5, "Children's Health and Dental Insurance Premium"). Therefore, on remand the trial court must determine the amount of retroactive child support by applying the child support guidelines. The trial court may consider Father's payment of health and dental insurance premiums in the child support worksheet calculation, but may not substitute the insurance costs for Father's basic child support obligations.

### Standing for Reimbursement of Birthing and Pregnancy Expenses

{21} We recognize the trial court's discretion to grant or deny pregnancy and birthing costs. The trial court *"may direct the father to pay the reasonable expenses of the mother's pregnancy, birth and confinement."* Section 40–11–15(C) (emphasis added). Therefore, the trial court had discretion to order, or not to order Father to pay the reasonable expenses of Mother's pregnancy, birth, and confinement. *See id.* Had the trial court denied Mother's costs by exercising that discretion, we would review that decision deferentially. *See Tedford v. Gregory,* 1998–NMCA–067, ¶ 43, 125 N.M. 206, 959 P.2d 540 (review for abuse of discretion trial court's order granting or denying an award of costs or attorney's fees). However, in this case, the trial court denied Mother's pregnancy and birthing expenses based on the erroneous legal conclusion that Mother did not have standing to seek reimbursement for the costs. This was an error of law. *See Garcia v. Sanchez,* 108 N.M. 388, 395, 772 P.2d 1311, 1318 (Ct.App.1989) (stating that "[w]here … the trial court decision is grounded upon an error of law a reviewing court may properly remand the case for redetermination of the issues under correct principles of law").

{22} The trial court's holding confuses standing with real party in interest. Standing turns on whether Mother can show an "injury in fact" traceable to Father's conduct. *See Crumpacker v.. DeNaples*, 1998–NMCA–169, ¶ 41, 126 N.M. 288, 968 P.2d 799. Real party in interest "on the other hand, entails identification of the person who possesses the particular right sought to be enforced." *Id.* (citing *Jesko v. Stauffer Chem. Co.*, 89 N.M. 786, 790, 558 P.2d 55, 59 (Ct.App.1976)). In this case, Mother had standing to sue Father for pregnancy and birthing expenses because she incurred the responsibility for those expenses, whether to a health care provider or to her parents. *Cf. Crumpacker*, 1998–NMCA–169, ¶ 42, 126 N.M. 288, 968 P.2d 799 (holding that notwithstanding the plaintiff's bankrupt status, the plaintiff had standing to sue because she was the party who suffered the alleged injury). Mother may not have been the real party in interest, but that alone does not preclude her from maintaining this action.

{23} "Every action shall be prosecuted in the name of the real party in interest; but ... a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought[.]" Rule 1–017(A) NMRA 1999. Under the UPA, "[a]ny interested party may bring an action for the purpose of determining the existence or nonexistence of the parent and child relationship." Section 40–11–7(A). Mother is an interested party in the action determining Father's paternity of Child, his liability for child support, and his potential liability for the costs associated with the pregnancy and birth of Child. Mother presented evidence that the hospital charged around $800 and the obstetrician charged about $720 when Child was born. Mother also testified that Child's maternal grandparents paid the pregnancy and birthing costs and that Mother always thought it was her responsibility to repay her parents.

{24} The language throughout the UPA authorizes a trial court to order a putative father to pay non-parties for costs for which he is found liable. *Cf.* § 40–11–16 (stating the court may order reasonable fees and costs to be paid by any party to certain non-parties); *and* § 40–11–17(B) (stating the court may order support payments to be made to "a [third] person, corporation or agency designated to collect or administer such funds for the benefit of the child, upon such terms as the court deems appropriate"). "If the existence of the father and child relationship is declared, or paternity or a duty of support has been acknowledged or adjudicated under the Uniform Parentage Act ..., the obligation of the father may be enforced in the same or other proceedings by any interested party." Section 40–11–17(A). Under the remedial purposes of the UPA, the language throughout the statute and the specific language found at Section 40–11–17(A), any obligation that Father may have for Mother's pregnancy and birthing costs may be enforced by Child's maternal grandparents in the same or in a subsequent proceeding. The trial court may order Father to reimburse Child's maternal grandparents directly. *See* § 40–11–15(C) (stating that the trial court's judgment order may contain any provision on "any other matter within the jurisdiction of the court").

{25} We note that Child's maternal grandparents may be joined in the claim for reimbursement of pregnancy and birthing costs under Rule 1–017(A) without prejudice to Father. *See Crumpacker*, 1998–NMCA–169, ¶ 37, 126 N.M. 288, 968 P.2d 799; *State ex rel. Salazar*, 1998–NMCA–093, ¶¶ 14–15, 125 N.M. 471, 963 P.2d 548 (stating that interest in judicial economy prevents dismissal of claim where real party in interest could be substituted without adverse affect on the respondent). Child's maternal grandparents may also be reimbursed by Mother. *See Tedford*, 1998–NMCA–067, ¶ 51, 125 N.M. 206, 959 P.2d 540 (Bosson, J., specially concurring).

{26} We reverse the trial court's legal conclusion that Mother did not have standing to seek reimbursement for pregnancy and birthing expenses. On remand, the trial court has the discretion to grant or deny those costs based upon its factual findings in this case or upon any legal defenses that may be available. *See* § 40–11–15(C).

### Award of Attorney's Fees

{27} It is within the trial court's discretion to award reasonable attorney's fees in a UPA claim. *See* § 40–11–16; *Tedford,* 1998–NMCA–067, ¶¶ 42–45, 125 N.M. 206, 959 P.2d 540. We review the trial court's order denying or granting attorney's fees for an abuse of discretion. *See id.* ¶ 43. An abuse of discretion occurs if the trial court's ruling is against the logic and effect of the facts and circumstances of the case. *See id.* Therefore, the trial court's discretion is not unlimited, but must comport with the facts and circumstances in each individual case. *See id.* The trial court should consider the nature of the proceedings involved, the complexity of the case, the ability of the parties' attorneys, and the parties' economic disparities. *See id.* ¶ 44.

{28} Mother presented evidence of the economic disparity between her and Father. Mother's attorney's fees amounted to $2,904.80, of which $1,890.10 was unpaid. Based upon the facts and circumstances in this case, the complexity and confusion surrounding the law applicable to paternity cases in this jurisdiction, and considering Mother's success on appeal and the underlying remedial purpose of the UPA, we conclude that it was error to grant Mother only $600 in attorney's fees. We remand for reconsideration of a fair award.

### CONCLUSION

{29} We reverse the trial court's conclusion that Mother waived retroactive child support from Father and that Mother had no standing to seek reimbursement of pregnancy and birthing costs. We remand for a calculation of retroactive child support, consideration of Mother's pregnancy and birthing costs, and a fair award of attorney's fees. We also grant Mother $1500 in reasonable attorney's fees on appeal.

{30} **IT IS SO ORDERED.**

PICKARD, C.J. and DONNELLY, J., concur.