2004-NMCA-048

90 P.3d 989

**Harla Kay WEBB, Petitioner–Appellant,**

v.

**Dwight Ray MENIX, Respondent–Appellee.**

**No. 23,736.**

Court of Appeals of New Mexico.

Feb. 20, 2004.

532

J. Robert Beauvais, J. Robert Beauvais, P.A., Ruidoso, NM, for Appellant.

Richard A. Hawthorne, Richard A. Hawthorne, P.A., Ruidoso, NM, for Appellee.

*OPINION*

PICKARD, J.

{1}   The issues in this case arise from Mother's attempt to receive retroactive child support payments under the Uniform Parentage Act [UPA], NMSA 1978, §§ 40–11–1 to –23 (1986, as amended through 2001). The parties' child was born in December 1986, shortly after their pro se divorce.   In May 1999, Mother filed this suit in her own name seeking a determination of paternity, as well as custody, past and future child support, and attorney fees.   The district court ruled that Mother waived most of her claim to retroactive child support, determined an amount of monthly support Father should pay, and awarded Mother a portion of her requested attorney fees.

{2}   The issues raised on appeal are whether the district court erred in (1) awarding child support retroactive only to Decem-

ber 1998, (2) awarding Mother only $1500 of her requested attorney fees, (3) refusing to allow the child to be added as a party at the commencement of trial, and (4) computing Father's available gross income for purposes of child support. For the reasons that follow, we affirm the judgment of the district court.

*RETROACTIVE CHILD SUPPORT*

■ {3} The UPA states that the court shall award child support retroactive to the child's birth provided that it consider applicable equitable defenses "in deciding whether and how long to order retroactive support." Section 40–11–15(C)(2). Before ruling that Mother had waived her claim to most of the retroactive child support, the district court noted that the equities weighed heavily on both sides in this case. Our review of the record leads us to conclude the district court properly weighed the equities.

■ {4} Our Court has previously recognized two kinds of common-law waiver in the child support context: intentional waiver and waiver by acquiescence. *See Sisneroz v. Polanco*, 1999–NMCA–039, ¶ 12, 126 N.M. 779, 975 P.2d 392. Intentional waiver consists of three elements: "(1) a known legal right; (2) relinquished for consideration; and (3) where waiver does not infringe on the rights of others." *Id.* ¶ 15. Noting that retroactive child support is for the benefit of the child as well as the parent, this Court determined that the father in *Sisneroz* did not establish all the elements of intentional waiver. *Id.* We do likewise.

■ {5} Unlike intentional waiver, however, the defense of waiver by acquiescence "arises when a person knows he is entitled to enforce a right and neglects to do so for such a length of time that under the facts of the case the other party may fairly infer that he has waived or abandoned such right." *Id.* ¶ 16 (internal quotation marks and citation omitted). Waiver by acquiescence should not be inferred from doubtful or ambiguous acts. *Id.* In rejecting the father's assertion of waiver by acquiescence in *Sisneroz*, this Court noted that he relied on the fact that the mother failed to ask him directly for support and, when he asked the child's maternal grandparents if the child needed anything, he was told that the child was doing fine. *Id.* ¶ 17. In *Sisneroz*, there was no evidence that the mother told the father she did not want his money. *Id.* The mother did not tell the father he could not see the child, and she facilitated a relationship between the father and the child. *Id.*

{6} Mother's actions in this case differ from those in *Sisneroz*. In this case, both parties testified that Mother told Father that the child was not his child. There was testimony that Mother also told third parties that Father was not the child's father and even identified another man as the father. Mother did not name Father on the birth certificate, which indicated that the father was unknown. The divorce decree, entered in the parties' pro se divorce, did not mention the unborn child, although the parties knew Mother was pregnant. Mother testified that she wanted the divorce before the birth certificate was issued and that she didn't want Father on the birth certificate because she was angry and frightened. There was undisputed evidence that Mother destroyed clothing for the child after she learned that Father had bought the clothing, instead of her parents' having bought it, as she was led to believe. Mother testified that she told her family that she did not want anything from Father.

{7} Mother explained that her purpose in asserting Father was not the child's biological father was so he would not take the baby from her. She testified she thought Father would kidnap the child and go to Italy where his father lived. There was evidence that Father once threatened to take the child during an argument when Mother was six or seven months pregnant, and it was during this argument that Mother told Father the child was not his. Mother also sought to explain her fear of Father with evidence that he had committed a battery on her and she was hospitalized as a result.

■ {8} On appeal, Mother argues the district court erred in refusing to adopt her requested finding that she had a reasonable fear that Father would take the child. This argument, however, ignores the appellate standard of review. In reviewing the district

court's findings, we view the evidence in the light most favorable to the findings and disregard unfavorable evidence. *See Williams v. Williams,* 109 N.M. 92, 95, 781 P.2d 1170, 1173 (Ct.App.1989). This Court does not reweigh the evidence or judge the credibility of the witnesses. *Id.* Although Mother's testimony about her fear that Father would take the child may not have been rebutted by other testimony, it was for the district court to weigh this testimony in the context of all the other evidence before it.

{9} The evidence supports the finding that, beginning in December 1998, Mother was willing to acknowledge Father as the child's father and to begin to facilitate a relationship between Father and the child. At the same time, Father began paying support for the child. Although Mother may have feared that Father would take the child as he once threatened in an argument before the child was born, the evidence that she denied his paternity to Father and others, she destroyed the baby clothing once she learned it was from Father and not her parents, she told her family she did not want anything from Father, and she did not take any action until late 1998 to acknowledge Father's paternity supports the determination that Mother waived any right or claim she had to child support until December 1998. *See id.* at 99, 781 P.2d at 1177 (affirming the determination that the mother waived child support arrearages for a time because she told the father that she did not want his money, she told him she did not want him to ever see the child again, and she did not ask the father for child support during that time); *cf. Sisneroz,* 1999–NMCA–039, ¶ 17, 126 N.M. 779, 975 P.2d 392 (reversing the determination that the mother waived her right to child support because the mother facilitated a relationship between the father and the child and had sought to establish paternity and obtain support through the Child Support Enforcement Division).

{10} In *Williams,* the mother had filed a URESA proceeding in Texas ten years before she sought arrearages in New Mexico. 109 N.M. at 100, 781 P.2d at 1178. Nevertheless, the waiver of arrearages initially awarded in the divorce decree was upheld on

appeal because the mother never collected the monies deposited as part of the URESA proceeding. This Court ruled the mother's action in Texas was not necessarily inconsistent with her statement to the father that she did not want his money or for him to see the child again. *Id.*

{11} Mother's conduct in the present case likewise supports the determination that she waived child support by denying Father's paternity, destroying the clothes he sent, and testifying that she did not want anything from him. Mother knew she was entitled to child support from Father, yet she did not seek support for twelve years, and she actively denied Father's paternity. The evidence in this case establishes the elements of waiver by acquiescence, and we affirm the district court's judgment awarding Mother retroactive child support beginning December 1998.

## AWARD OF TRIAL COSTS AND ATTORNEY FEES

{12} Under the UPA, the court may order reasonable attorney fees and costs "to be paid by any party in proportions and at times determined by the court." Section 40–11–16. In awarding fees and costs under the UPA, the court should consider the nature of the proceedings, the complexity of the case, the abilities of the parties' attorneys, and the parties' economic disparities. *See Sisneroz,* 1999–NMCA–039, ¶ 27, 126 N.M. 779, 975 P.2d 392. We review this award for an abuse of discretion. *Id.*

{13} The record indicates that attorney fees and costs billed to Mother exceeded $11,000 as of March 31, 2002. The record also indicates that Mother had not made any payments on this amount. Father's attorney fees and costs to the same date were approximately half this amount. The judgment awarded Mother fees and costs of $1500. The district court stated in the judgment that this award was being made "in order to level the playing field somewhat. Not all fees are awarded due to [Mother's] actions in this case."

{14} We proceed to review the district court's findings and conclusions that relate to the nature of the proceedings, the complexity of the case, the abilities of the parties' attor-

neys, and the parties' economic disparities. In its findings of fact, the district court made note of the evidence that Mother and Father had agreed to see an attorney to obtain a stipulated decree to establish paternity, a visitation schedule, and child support. Instead, Mother filed this action seeking retroactive child support. At the hearing, Mother testified several times that she filed this action because she was angry that Father's wife arranged for a paternity test after he agreed to pay for the child's braces, and she felt provoked to file this suit.

{15} Paternity was not an issue in this case, but Mother's right to retroactive child support was contested, and determining income for purposes of child support was somewhat complicated by the fact of Father's personal injury settlement and the parties' self-employment. The ability of the parties' attorneys does not appear to have been a significant factor in determining an appropriate award of costs and fees, although Mother recovered only a small fraction of the relief she sought.

{16} Finally, it appears that there is some economic disparity between the parties. Based on the court's child support worksheets, it appears that Father's income was more than twice Mother's income for the years 2001 and 2002. In *Tedford v. Gregory*, 1998–NMCA–067, ¶ 44, 125 N.M. 206, 959 P.2d 540, this Court intimated that, similar to domestic relations cases, the most important factor is economic disparity. Nevertheless, as we stated in *Tedford*, a party is not automatically entitled to an award of attorney fees under the UPA, but such an award *may* be made upon a showing of economic disparity. *Id.* In *Tedford*, this Court reversed the refusal to grant the prevailing daughter any fees, but affirmed the refusal to grant costs and fees to the party who had supported the daughter but was barred from any recovery against the father or the daughter. *Id.* ¶¶ 45–46.

{17} In this case, the district court had to weigh the parties' relative economic disparity with the paucity of relief granted to Mother and the fact that the suit was brought contrary to the parties' agreement when paternity was not at issue. Based on

these factors, we affirm the award of attorney fees and costs as within the district court's discretion. *See id.* ¶ 43; *cf. Sisneroz*, 1999–NMCA–039, ¶ 28, 126 N.M. 779, 975 P.2d 392 (reversing an award of $600 in fees out of a total bill of over $2900 where the mother was found not to have waived her right to retroactive child support).

## REFUSAL TO GRANT THE MOTION TO ADD THE CHILD AS A PARTY

■ {18} The parties have briefed the issue of whether the district court erred in refusing to grant a motion to add the child as a party. *See generally* Rules 1–015(C) and –017 NMRA 2003. Although it appears that the issue of whether the child was a party was raised at the hearing, it is not clear that there was a motion to add the child as a party or that the district court ruled on this issue.

{19} Our review of the tape of the proceeding indicates that the district court introduced the case and then asked who would be witnesses. Mother's counsel responded that Mother would be a witness, and sitting at counsel table with Mother was the child whom they also intended to call as a witness. The district court then asked Mother's counsel if he intended to call the child, and Mother's counsel repeated that they did intend to call the child and went on to state, "Actually, your honor, I consider the child a real party in interest. I think if you look at the caselaw this is . . . actually for her benefit as much as it is for her mother."

{20} In response, Father's attorney noted that the child had not been named as a party to the action and stated, "If she's going to be a party that will seriously alter the legal consequences of what can happen here today. It's just not fair to come to trial on the merits and say now this child's a party." The district court implicitly agreed, noting the child was not a named party and did not need to witness her parents in an adversarial situation. The court asked Father's counsel if he wanted to invoke "the rule." The rule was invoked and the child and another witness were excluded from the courtroom. Mother's counsel stated that he disagreed that the child was not a party since the

action was clearly for her benefit, but he respected the court's decision.

{21} Assuming without deciding that this exchange sufficiently raised and preserved the issue of whether the child should be added as a party, we review the district court's refusal for an abuse of discretion. *See Crumpacker v. DeNaples*, 1998–NMCA–169, ¶ 16, 126 N.M. 288, 968 P.2d 799. A child may be a party to an action under the UPA, and the child's custodian may act as guardian. Section 40–11–9. However, nothing in the statute indicates that a child is automatically a party by virtue of the fact that a child could benefit from the proceedings. Mother and the child had independent rights to seek a determination of paternity and child support. Mother brought suit in her own name and did not name the child in the petition against Father. Father's response to Mother's claim for child support alleged equitable defenses against Mother based on her conduct. These defenses against Mother formed the gravamen of his case, and Father would have been severely prejudiced by allowing the child to be added as a party at the inception of the hearing.

{22} Although leave to amend should be freely given when justice so requires, it is not an abuse of discretion to deny a request to amend the complaint when the opposing party can demonstrate prejudice. *Cf. Teague–Strebeck Motors v. Chrysler Ins. Co.*, 1999–NMCA–109, ¶ 11, 127 N.M. 603, 985 P.2d 1183 (affirming the district court's decision to allow an amendment adding a real party in interest as a plaintiff where the failure to do so was an honest mistake arising from the course of dealings with the parties and there was "absolutely no prejudice" to the defendant's ability to defend against the claims), *overruled on other grounds by In re Sloan*, 2004-NMSC-004, 135 N.M. 106, 85 P.3d 230 (2004); *Crumpacker*, 1998–NMCA–169, ¶¶ 7, 27, 36, 126 N.M. 288, 968 P.2d 799 (allowing an amendment to a medical malpractice suit to add the named plaintiff's bankruptcy trustee as the real party in interest when the named party lacked standing to bring the suit and "most importantly, Defendants have shown no prej-

udice to them if the amendment were allowed"). Because the addition of the child as a party on the day of the trial would have substantially changed the case that Father was prepared to try, we hold there was no abuse of discretion in the court's refusal to add the child as a party.

{23} In her reply brief, Mother asks this Court to determine that the child is not precluded from proceeding in her own right for the retroactive support that was denied if we affirm the decision not to allow the pleadings to be amended. We reject this request for two reasons. First, this Court does not consider arguments raised for the first time in the reply brief. *See State v. Castillo–Sanchez*, 1999–NMCA–085, ¶ 20, 127 N.M. 540, 984 P.2d 787. Secondly, Mother does not indicate that this issue was raised below or is otherwise ripe for consideration. *See id.* ¶ 21; *see also Insure New Mexico LLC v. McGonigle*, 2000–NMCA–018, ¶ 27, 128 N.M. 611, 995 P.2d 1053 (stating that this Court will not issue an advisory opinion in the absence of a justiciable issue and refusing the defendant's request to preserve in its mandate that there is a right of independent action for malicious prosecution where the defendant had not filed such an action).

{24} In affirming the refusal to add the child as a party, we make no comment about the child's right to pursue retroactive child support on her own behalf.

## COMPUTATION OF CHILD SUPPORT

{25} Mother argues that the district court erred in imputing minimum wage income to Father for December 1998 and for 1999. She also asserts error in concluding that Father's income for 2000 should be based on actual income from settlement proceeds including principal and withdrawals, averaged over the twelve months of that year. She asserts that Father never indicated his injuries inhibited him from making a living and the district court abused its discretion in not imputing as income a prorated amount of the lump sum settlement proceeds from the time of receipt until the child reaches the age of majority such that the entire settlement would be used up at the child's majority.

{26} Father received a structured settlement from an injury that occurred at the racetrack where he worked as a jockey in 1982. He testified that his right arm was paralyzed as a result of the injury and that he gained limited motion after surgery in 1985 or 1986. He also testified that he was able to conduct his horse hauling business with his left arm. There was no evidence that the settlement agreement allocated any specific amounts to pain and suffering.

{27} In its letter decision dated February 2002, the district court explained that it assigned minimum wage to Father in 1998 and 1999 because he had not yet received his lump sum settlement payment, and his horse hauling business was not profitable during those years. For the year 2000, the court calculated child support by adding 4.65% of the settlement proceeds to the minimum wage assigned for the horse hauling business. For 2001, the calculation was the same.

{28} It appears that the figures for the settlement are based on ·statements of Father's account with John Edwards, a financial institution. It appears that the percentage rate of return is based on the long term treasury bond rate of return suggested at the hearing. Although the court made the finding that Father had access to the entire settlement amount, it also found that he uses this as a source of income, including interest and principal, because he is disabled as a result of the injury for which the settlement was made.

{29} In its findings and conclusions, the district court recalculated child support based on the actual amount of income Father received from the settlement proceeds, including the amount that Father withdrew from the principal of his settlement proceeds. This resulted in monthly child support of $542.23 for the year 2001. For future years, the district court set base child support at $349.80, which was calculated on the imputed minimum wage from the business plus the long term treasury bond rate of return on the settlement proceeds. In addition to the $349.80 per month, the district court required Father to pay as child support 11% of any amounts Father receives in excess of $25,992 per year, including principal reduction from the settlement.

{30} "The setting of child support is left to the sound discretion of the trial court as long as that discretion is exercised in accordance with the child support guidelines." *Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203. We determine that it was not an abuse of discretion, and it was in accordance with the child support guidelines to determine that the principal of the lump sum settlement award was not income available to the child for child support purposes except to the extent that Father actually withdrew it for his own purposes. *See Boutz v. Donaldson*, 1999–NMCA–131, ¶ 14, 128 N.M. 232, 991 P.2d 517 (stating that "[t]he definition of gross income in the child support guidelines represents a legislative effort to estimate the 'actual cash flow,' that is the amount of money that will actually be available to support the children" (internal citation omitted)).

{31} Several New Mexico cases have addressed similar factual scenarios. In *Quintana*, this Court sustained the district court's determination that interest earned from the father's retirement investments was properly included in calculating the amount of child support, even though it was not available unless penalties were paid. 2002–NMCA–008, ¶¶ 25–32, 131 N.M. 435, 38 P.3d 203. This Court rejected the father's argument that the district court required him to liquidate his retirement accounts since the district court only recognized that these accounts could be an alternative source of income for meeting his support obligations much like the mother's savings account could be an alternative source for meeting her support obligations should the mother's other sources of income prove inadequate. *Id.* ¶ 31; *see also Talley v. Talley*, 115 N.M. 89, 91, 847 P.2d 323, 325 (Ct.App. 1993) (affirming the amount of child support awarded because the father's income from real estate contracts and potential income from idle assets justified the amount awarded).

{32} In another case, this Court distinguished between re-investments in business made to sustain the business and re-invest-

ments made to grow the business for purposes of calculating child support. *See Major v. Major,* 1998–NMCA–001, ¶¶ 5–6, 124 N.M. 436, 952 P.2d 37. In *Major,* the father had testified that the majority of his income came from the sale of calves and this Court noted that, "[i]f he failed to replace barren or lost cattle, at some point his breeding herd would diminish to the point where there would be essentially no income." *Id.* ¶ 6. Reinvestments made to sustain the business, namely replenishing the father's herd of cattle, were allowed to be deducted as ordinary and necessary business expenses for the purposes of calculating child support. *Id.* Reinvestments for purposes of growing the business, however, were to be treated as income for the purpose of child support. *Id.* ¶ 5.

{33} Other jurisdictions have more directly addressed the issue of how to treat a lump sum award from a personal injury settlement when calculating child support. *See generally* Genna Rosten, Annotation, *Consideration of Obligor Spouse's or Parent's Personal–Injury Recovery or Settlement in Fixing Alimony or Child Support Award,* 59 A.L.R. 5th 489, 500–28 (1998). Some of these cases determine that a parent is not required to liquidate or distribute a nonrecurring lump sum award of assets that are generating income from which child support is being paid where there is adequate income to pay child support. *See, e.g., S.G. v. D.M.,* 171 Misc.2d 169, 653 N.Y.S.2d 525, 526 (Fam. Ct.1996); *Erie County Dep't of Soc. Servs. ex rel. Trunfio v. LaBarge,* 159 Misc.2d 806, 606 N.Y.S.2d 520, 522 (Fam.Ct.1993). Other courts have allocated the lump sum personal injury settlement received over different periods of time, such as the time the child would have been eligible for support, *see, e.g., Mehne v. Hess,* 4 Neb.App. 935, 553 N.W.2d 482, 488–89 (1996), or the time between periodic lump sum awards, *see, e.g., Cleveland v. Cleveland,* 249 N.J.Super. 96, 592 A.2d 20, 23 (1991), or for the year following the award, *see, e.g., Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346, 1347–48, 1349–50 (1996).

{34} Except for *Boutz,* upon which the parties almost exclusively rely, the parties have not called our attention to any of the above-cited cases. They have not argued with supporting authorities any of the special factors involved in personal injury settlements that are deemed controlling or important in those cases. They have not tailored their arguments to the particular purposes of New Mexico's child support statutes. Our decision is therefore based on the arguments made by the parties, and different arguments in a future case may lead to a different result.

{35} Taking guidance from New Mexico cases such as *Quintana, Talley,* and *Major,* we find persuasive the reasoning that the undistributed principal amount from a lump sum personal injury settlement should not be considered income when it is being used to generate the income to pay child support, there is adequate income to pay child support, and there is evidence that a parent needs the remaining principal over the course of the parent's own life for the parent's own support. Because these factors are present, we hold that the district court properly exercised its discretion in accordance with the child support guidelines to calculate child support based on a reasonable rate of return of the money invested from Father's personal injury lump sum payment plus the withdrawals of principal that Father actually takes.

## CONCLUSION

{36} We affirm the judgment of the district court. The parties shall bear their own fees and costs on appeal.

{37} **IT IS SO ORDERED.**

ALARID and ROBINSON, JJ., concur.