2007-NMCA-145

171 P.3d 774

**Evan ULLRICH, Petitioner–Appellant,**

v.

**Paul BLANCHARD, Respondent–Appellee.**

No. 27,130.

Court of Appeals of New Mexico.

Sept. 19, 2007.

Certiorari Granted, No. 30,698, Nov. 5, 2007.

Geer, Wissel & Levy, P.A., Robert D. Levy, Jane C. Levy, Albuquerque, NM, for Appellant.

Little & Gilman–Tepper, P.A., Roberta S. Batley, Albuquerque, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} Petitioner appeals from the district court's order granting summary judgment in favor of Respondent, Petitioner's alleged natural father. Below, the district court concluded that Petitioner's suit to establish paternity and to recover retroactive child support was barred by the doctrines of res judicata and collateral estoppel based on a previous suit filed by Petitioner's mother. We hold that the district court erred in determining that res judicata and collateral estoppel barred Petitioner's suit. However, we disagree with Petitioner's assertion that earlier payments made by Respondent should not be considered by the district court in determining the amount of retroactive child support owed should paternity be established on remand. We reverse and remand for further proceedings.

## BACKGROUND

{2} Petitioner was born on November 9, 1987. Petitioner was born with spina bifida and is confined to a wheelchair as a result. Approximately six years after Petitioner's birth, Petitioner's mother filed a petition for custody and to establish child support against Respondent. The petition was subsequently amended to add Petitioner as a party. Respondent filed a response denying that he was Petitioner's father.

{3} In December 1993, Petitioner's mother signed a stipulation agreeing to release all claims against Respondent relating to his alleged paternity of Petitioner in exchange for five annual payments of $10,000. Four years later, after Respondent had made his final payment to Petitioner's mother, the district court entered a judgment and order (1997 Order) finding that Respondent was not the father of Petitioner and that a parent-child relationship between Respondent and Petitioner did not exist. The court ordered the petition dismissed with prejudice.

{4} Less than ninety days after the district court entered its judgment and order, Petitioner's mother filed a Rule 1–060(B) NMRA motion for relief from judgment and for genetic testing. The motion alleged that at the time the stipulation was entered into, Petitioner was only six years old and his full medical needs were unknown. The motion further alleged that Petitioner's needs were not adequately represented in the matter.

{5} The district court referred the parties to a mediator. A guardian ad litem (GAL) was also appointed to represent Petitioner's interests. The parties eventually agreed to settle the motion for relief and entered into a second stipulated agreement. As part of this agreement, Respondent agreed to pay Petitioner's mother, for the benefit of Petitioner, $9,000 a year until Petitioner reached the age of eighteen. After that date, no further payments would be owed by Respondent.

{6} Prior to a hearing before the district court regarding the stipulated agreement, the GAL sent a letter to the parties. In the letter, the GAL expressed his concerns with letting Respondent "off the hook" with respect to the obligations of parenthood. The GAL nonetheless acquiesced to the settlement on the ground that the finding in the 1997 Order that Respondent was not the father of Petitioner be set aside. The GAL elaborated that he believed that it was "important to leave the issue of paternity open so that the minor child will have the ability to pursue that claim, if and when he chooses." The GAL added that he would not approve any settlement that would attempt to limit Petitioner's right to pursue the paternity issue.

{7} The court approved the stipulation of the parties and adopted it as a final judgment and order (1999 Order). In addition to the provisions of the stipulated agreement, the final judgment and order stated that "[t]here is no finding that [Respondent] is the natural father of [Petitioner]." The judgment also stated that the GAL believed that the settlement was in the best interests of Petitioner.

{8} When Petitioner reached the age of majority, he filed a petition to establish paternity and order support against Respondent. Respondent subsequently filed a motion to dismiss arguing, among other defenses, that the petition was barred by res judicata and collateral estoppel. In deciding whether Petitioner's petition was barred, the district court took judicial notice of the earlier paternity case filed by Petitioner's mother. The court also considered the letter written by Petitioner's GAL in the earlier proceeding, as well as an affidavit signed by the GAL.

Recognizing that matters outside the pleadings were being considered, the court treated the motion to dismiss as one for summary judgment. The court then concluded that the 1997 Order was the law of the case, and that the finding in the 1997 Order that Respondent was not Petitioner's father was not inconsistent with the finding in the 1999 Order that there was "no finding" that Respondent was Petitioner's father. As such, the court decided that the 1999 Order did not set aside, modify, or supersede the 1997 Order. The court further concluded that Petitioner's petition was barred by the doctrines of res judicata and collateral estoppel. This appeal follows.

## DISCUSSION

{9} On appeal, Petitioner contends that the district court's findings and conclusions were erroneous as a matter of law. Specifically, Petitioner asserts that the 1999 Order superseded the 1997 Order and that the doctrines of res judicata and collateral estoppel do not bar his paternity claim. Petitioner also argues in his reply brief that Respondent's payments made pursuant to the earlier proceedings do not constitute child support and therefore should not be considered in determining the amount of retroactive child support Petitioner is entitled to. After briefly stating the applicable standard of review, we will address each issue in turn.

### Standard of Review

{10} "The standard of review for a motion for summary judgment is whether there are any genuine issues of material fact and whether the moving party is entitled to summary judgment as a matter of law." *Williams v. Cent. Consol. Sch. Dist.*, 1998–NMCA–006, ¶ 7, 124 N.M. 488, 952 P.2d 978. On review, we will construe "the facts in the light most favorable to the party opposing summary judgment and drawing all reasonable inferences in support of a trial on the merits." *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006–NMCA–151, ¶ 5, 140 N.M. 720, 148 P.3d 806. "A decision to grant summary judgment on preclusion principles is reviewed under a de novo standard." *Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 76, 134 N.M. 77, 73 P.3d 215.

## The 1997 Order was Superseded by the 1999 Order

{11} Below, the district court concluded that the 1997 Order was the law of the case and relied on the provisions of that order to determine whether Petitioner's current action was barred. Respondent similarly relies on the 1997 Order on appeal. Petitioner, however, maintains that the 1997 Order was superseded by the district court's decision to reopen the case and enter a new judgment and order in 1999. We agree.

{12} As previously noted, Petitioner's mother filed a motion for relief from judgment under Rule 1–060(B) less than ninety days after the 1997 Order was entered. *See* Rule 1–060(B) (allowing a party, "[o]n motion and upon such terms as are just," to seek relief "from a final judgment, order or proceeding"). By considering the motion, directing the parties to mediation, and subsequently entering a new order and judgment, we believe that the district court in effect vacated the earlier order. *See Nichols v. Nichols,* 98 N.M. 322, 326–27, 648 P.2d 780, 784–85 (1982). Notably, "[t]he fact that the court did not state in the second judgment that the first had been vacated or withdrawn is irrelevant, especially in light of the rule that when there are two conflicting judgments rendered by a court upon the same rights of the same parties that which is later in time prevails." *Id.; see Gilmore v. Gilmore,* 106 N.M. 788, 790–91, 750 P.2d 1114, 1116–17 (Ct.App.1988) (concluding that based on the law of successive judgments, the more recent judgment supersedes any earlier judgments); *Hort v. Gen. Elec. Co.,* 92 N.M. 359, 360, 588 P.2d 560, 561 (Ct.App.1978) (holding that a second judgment controls over an earlier judgment entered in the same case).

{13} Further, we observe that Respondent does not challenge the district court's authority to enter the 1999 Order and that he appears to have been a willing participant in the mediation and stipulation leading to the 1999 Order. Moreover, Respondent does not cite any authority on appeal to contradict Petitioner's assertion that the 1997 Order was superseded by the 1999 Order. Finally, as we discuss in paragraph 18, the findings regarding paternity in the 1999 and 1997 Orders were inconsistent. As such, we conclude that the district court erred in determining that the 1997 Order was not superseded by the latter order. Thus, any reliance on the 1997 Order by Respondent is misplaced.

## Res Judicata & Collateral Estoppel

## Do Not Bar Petitioner's Petition for Paternity or Child Support

{14} Because we conclude that the 1999 Order superseded the 1997 Order, our inquiry in the present case is whether the 1999 Order bars Petitioner's current petition under the doctrines of res judicata and collateral estoppel. As the party seeking to bar Petitioner's claims, Respondent has the burden of establishing that the elements of res judicata or collateral estoppel are met. *Cagan v. Vill. of Angel Fire,* 2005–NMCA–059, ¶ 7, 137 N.M. 570, 113 P.3d 393. We do not believe that Respondent met this burden.

{15} "Under the doctrine of res judicata, a prior judgment on the merits bars a subsequent suit involving the same parties or privies based on the same cause of action." *Myers v. Olson,* 100 N.M. 745, 747, 676 P.2d 822, 824 (1984). For res judicata to apply,

> The second suit must be identical with the prior action in four respects: 1) the parties must be the same or in privity; 2) the subject matter must be identical; 3) the capacity or character of persons for or against whom the claim is made must be the same; and 4) the same cause of action must be involved in both suits.

*Id.* Petitioner does not dispute that the above elements are met, but instead argues that an exception to res judicata is applicable in the present case. We agree.

{16} Res judicata does not apply where "issues or matters are not determined or are reserved for future adjudication or litigation." *State ex rel. Bliss v. Casarez,* 52 N.M. 406, 408, 200 P.2d 369, 370 (1948) (internal quotation marks and citation omitted); *see Apodaca,* 2003–NMCA–085, ¶ 85, 134 N.M. 77, 73 P.3d 215 (recognizing the "express reservation of the plaintiff's right to

maintain a second action" as an exception to the doctrine of res judicata). According to Petitioner, the "1999 Order was clearly intended to reserve the claim of paternity" and the district court therefore erred when it concluded that res judicata barred Petitioner's claim.

{17} In his letter regarding the proposed stipulation between the parties, the GAL discussed the importance of leaving "the issue of paternity open so that the minor child will have the ability to pursue that claim, if and when he chooses." As such, the GAL refused to approve any settlement that would attempt to limit Petitioner's right to pursue the paternity issue. The GAL reiterated his intentions in an affidavit considered by the district court below. In the affidavit, the GAL stated that he approved the stipulation between the parties because the stipulation "kept open the issue of paternity for [Petitioner] to pursue if or when he decided to do so." Additionally, the GAL explained in his affidavit that he believed that by leaving the question of paternity open in the 1999 Order, the issue of child support was also being left open. *See Sisneroz v. Polanco,* 1999–NMCA–039, ¶ 8, 126 N.M. 779, 975 P.2d 392 ("Children born out-of-wedlock must first adjudicate paternity before a court can enforce their interest in child support[.]").

{18} The GAL's impressions regarding the issue of paternity in the 1999 Order are also supported by a comparison between the language used in the 1997 and 1999 orders. In the 1997 Order, the district court made a finding that Respondent was "not the father of the minor child, [Petitioner]." Conversely, the 1999 Order states that "[t]here is no finding that [Respondent] is the natural father of [Petitioner]." Although Respondent argues that there are no material differences between the two findings, we disagree. The 1997 Order contains an express finding that Respondent was not Petitioner's father. The 1999 Order, on the other hand, indicates that there is "no finding" regarding paternity and therefore leaves the question of paternity open. This interpretation of the court's finding is supported by the letter and affidavit of the GAL, both of which were considered by the district court below. It is also supported

by the 1999 Order, which expressly had the approval of the GAL, which approval was conditioned on his insistence that paternity not be decided one way or the other. Because we believe that the 1999 Order left open the ability of Petitioner to pursue paternity and child support claims against Respondent, we hold that res judicata does not bar Petitioner's claim.

{19} "[C]ollateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or *issues* actually and necessarily decided in a prior suit.'" *Deflon v. Sawyers,* 2006–NMSC–025, ¶ 13, 139 N.M. 637, 137 P.3d 577 (quoting *Adams v. United Steelworkers of Am.,* 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). In order for collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined." *City of Sunland Park v. Macias,* 2003–NMCA–098, ¶ 10, 134 N.M. 216, 75 P.3d 816.

{20} We conclude that collateral estoppel is inapplicable because the ultimate issues in the present case were not litigated or decided in the first lawsuit. *State ex rel. Bd. of County Comm'rs v. Williams,* 2007–NMCA–036, ¶ 28, 141 N.M. 356, 155 P.3d 761. As previously discussed, the question of paternity was not resolved by the earlier proceedings, and it is doubtful that the annual payments by Respondent can be construed as satisfying his potential child support obligation, particularly since neither the court nor the parties appeared to have fully considered the child support guidelines in determining the appropriate settlement and because there was no finding of paternity. *See Sisneroz,* 1999–NMCA–039, ¶ 8, 126 N.M. 779, 975 P.2d 392. Rather, as discussed with respect to res judicata, it appears that the ability of Petitioner to pursue his own claims upon reaching the age of majority was reserved by the court and that Petitioner's current claims were therefore not actually litigated and determined in the prior action. We therefore hold that collateral estoppel

does not bar Petitioner's claim for a determination of paternity and child support.

### Effect of Respondent's Payments Under the 1997 and 1999 Orders

■ {21} Petitioner argues that Respondent's payments made pursuant to the earlier stipulations do not constitute child support and therefore should not be considered in determining the amount of retroactive child support Petitioner may be entitled to. Although Petitioner raises this argument for the first time in his reply brief, we nonetheless address it because the issue may arise on remand, depending on the district court's decision on Respondent's defenses of estoppel, waiver, unclean hands, or other defenses, that have yet to be determined.

{22} In awarding retroactive child support, a court should consider any "applicable equitable defenses 'in deciding whether and how long to order retroactive support.'" *Webb v. Menix*, 2004–NMCA–048, ¶ 3, 135 N.M. 531, 90 P.3d 989 (quoting NMSA 1978, § 40–11–15(C)(2) (2004)). We similarly hold that the district court on remand should consider the effect of Respondent's previous payments should paternity be determined and the issue of retroactive child support arise. As a matter of equity, we believe that such payments may be used to offset Respondent's potential child support obligation, particularly since Petitioner was a party to the earlier proceeding and agreed to the settlement amount and because the payments were paid to Petitioner's mother on his behalf. *Cf. Mask v. Mask*, 95 N.M. 229, 231, 620 P.2d 883, 885 (1980) ("[I]n a proceeding for the enforcement of a support order, any valid defense against payment may be raised, including the defense of payment from some other source." (citation omitted)); *Ingalls v. Ingalls*, 119 N.M. 85, 89, 888 P.2d 967, 971 (Ct.App.1994) ("In a proceeding to enforce a child support order, the trial court also has latitude to consider any equitable defense."); *Hopkins v. Hopkins*, 109 N.M. 233, 237, 784 P.2d 420, 424 (Ct.App. 1989) ("[I]n the context of contempt proceedings, the court has the power to consider any valid defense, including ... payment from another source, or equitable defenses such as laches and waiver.").

### CONCLUSION

{23} We reverse the district court's grant of summary judgment and remand for further proceedings.

{24} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.