507 P.2d 781

**Ruric D. MASON, Plaintiff-Appellee,**
v.
**Barbara E. MASON, Defendant-Appellant.**
**No. 9495.**

Supreme Court of New Mexico.
March 16, 1973.

Sommer, Lawler & Scheuer, Santa Fe, for appellant.

Hunter L. Geer, Albuquerque, for appellee.

## OPINION

OMAN, Justice.

The parties hereto were formerly husband and wife. They have four children. The husband, as plaintiff, was granted a divorce from the wife, as defendant, by final judgment and decree entered July 17, 1970.

A written stipulation between the parties filed in the divorce proceedings, approved by the trial court, and made a part of the final judgment and decree, provided in material part:

"7. Defendant shall be awarded custody of the four minor children of the parties, namely, Robin V. Mason, born on December 9, 1951; O'Brien Mason, born on February 14, 1953; Kathleen Mason, born on December 25, 1954 and Shelley Mason, born on June 15, 1957, with the right upon the part of plaintiff to visit with said children at all reasonable times and places and to have said children with him for reasonable periods of time.

"8. As support for the minor children of the parties plaintiff will pay to defendant the sum of $115.00 per month per child during the respective minority of said children or until they earlier become married or otherwise emancipated, said payments to be made semi-monthly on or before the 5th and 20th days of each month during the time required to effectuate the payments herein provided. It is further agreed that payments in behalf of any child shall be waived for the period such child is regularly enrolled in and attending college and living away from the residence of defendant provided plaintiff is paying or has obliged himself to pay essentially all of the costs of room, board, tuition and books for such child. Status of such child on date

support payments are due shall determine whether such payment shall be waived.

"9. The parties represent and agree that each of the four children is owner of insurance policies in the amount of $2,000 on his or her respective life, that plaintiff will continue to pay premiums due on such policies until they are paid up and shall be entitled to be named as sole beneficiary on each of such policies, and that during the respective minorities of the children such policies may not be cashed, collateralized or borrowed against without the express written consent of both parties.

"10. The plaintiff will provide any and all medical, surgical and hospitalization expenses and costs incurred through the treatment of the four aforesaid children until said children attain their lawful majorities, earlier marry or otherwise become emancipated, with the exception that the defendant will pay the first $50.00 incurred and not covered by hospitalization insurance through any such care or treatment for any one illness for any one child.

"11. Until such time as each living child of the parties attains his or her lawful majority, earlier marries or otherwise becomes emancipated, the plaintiff will maintain life insurance in a minimum amount of $7,500.00 for each such minor child, with the minor children of the parties, or the survivor or survivors of them, being named as beneficiaries, in equal shares thereof. From and after the attaining of the age of twenty-one (21) years of each of said children or its earlier marriage or earlier emancipation, the plaintiff shall be free to delete said child as the beneficiary on such insurance or otherwise deal with such insurance as to him shall appear proper."

Plaintiff complied with the decree, and particularly with the provisions of paragraph 8 of the stipulation, through July 31, 1971. During the month of August 1971,

the four children resided with defendant, but plaintiff failed to make payments to her on behalf of Robin and O'Brien, the two older children, on the ground that these two children, who were then 20 and 18 years of age respectively, had attained their majority and were thereupon emancipated by the provisions of Laws of 1971, ch. 213 § 1, which became effective June 18, 1971, and now appears as § 13–13–1, N.M.S.A. 1953 (Repl. Vol. 3, Supp.1971), and provides:

"13–13–1. *Age of majority—Eighteen years—Exception.*—A. Except as provided in subsections B and C, notwithstanding any other law to the contrary:

"(1) any person who has reached his eighteenth birthday shall be considered to have reached his majority and is an adult for all purposes the same as if he had reached his twenty-first birthday;

"(2) any law conferring any right or privilege, or imposing any duty or obligation, upon any person who has reached his twenty-first birthday shall apply to any person who has reached his eighteenth birthday;

"(3) any law which denies any right or privilege to persons who have not reached their twenty-first birthday shall apply only to persons who have not reached their eighteenth birthday; and

"(4) any law, except the Liquor Control Act [46–1–1 to 46–11–4], which differentiates between treatment to be accorded persons who have reached their twenty-first birthday and those who have not, shall differentiate between treatment to be accorded persons who have reached their eighteenth birthday and those who have not.

"B. It is the intent of the legislature that this general law shall control over any conflicting prior special law except that it shall not apply to or change any age requirements for exercising the elective franchise.

"C. Provided, however, that for the purposes of the Uniform Gifts to Minors Act [48–20–1 to 48–20–10], as it relates to any gift made prior to the effective date of this act, the donee shall not be entitled to delivery or payment over of the gift until he has reached his twenty-first birthday."

Plaintiff's position was and is that these two older children had become emancipated, and, therefore, he was no longer obligated under the law or under the stipulation and decree to support them. Subsequent to August 1971 he did in fact assume payment of tuition, room and board for O'Brien who entered college, but urges he did so pursuant to an arrangement between him and O'Brien and not by reason of any obligation to do so under the stipulation and decree.

Defendant sought a court order compelling plaintiff to pay her the support monies for Robin and O'Brien for the month of August 1971, and for Robin thereafter in accordance with the provisions of paragraph 8 of the stipulation above quoted. The trial court entered an order denying defendant relief on the ground that the two older children had been emancipated by the provisions of § 13–13–1, supra. Defendant thereupon appealed.

The parties agree that the stipulation, quoted from above, which was approved by the trial court and made a part of the final judgment and decree, constitutes a contract between them. Were it not for the contractual obligation of plaintiff to make support payments on behalf of Robin and O'Brien, the order of the trial court would probably be affirmed in accordance with the holding of the Kentucky court in Young v. Young, 413 S.W.2d 887 (Ky. App.1967). See also Blackard v. Blackard, 426 S.W.2d 471 (Ky.App.1968).

If the contract here referred to "minority" alone, the holdings in Kirchner v. Kirchner, 465 S.W.2d 299 (Ky.App.1971) and Collins v. Collins, 418 S.W.2d 739 (Ky. App.1967) which were opposite to the holdings reached in the Young and Blackard cases, would perhaps persuade us to reverse the trial court.

However, we are here concerned with language different from that contained in the contract in either the Kirchner or the Collins case, and the interpretations by the Kentucky courts in those cases are neither applicable nor persuasive in interpreting the language of the contract before us. The period during which plaintiff obligated himself by the provisions of the stipulation to make payments as support for each of his children was "during the respective minority of said children or until they earlier become married or otherwise emancipated." Clearly this language cannot be said to be synonymous with twenty-one years of age, or to imply an intent on the part of the parties that the payments on behalf of each child should continue until that child attained the age of twenty-one years.

■■■ Minority, in the sense of our concern here, is a legal status conditioned primarily upon age. See definitions of minor and status in Webster's Third New International Dictionary, Unabridged (1961) and definitions of infancy in Black's Law Dictionary (Rev. 4th Ed. 1968) and infant in 1 Bouvier's Law Dictionary (3d Rev. by Rawle 1914). However, the existence of this status is not conditioned entirely upon age, and certainly not in the sense in which it was used in the stipulation. It is clear that the parties intended plaintiff should be responsible for support payments on behalf of a particular child only so long as the child should remain unmarried or otherwise unemancipated and then only until he or she attained the age of majority. It was plaintiff's duty under the law to support his children during their minority. State ex rel. Terry v. Terry, 80 N.M. 185, 453 P.2d 206 (1969); Wilson v. Wilson, 45 N.M. 224, 114 P.2d 737 (1941); State ex rel. Juvenile Dept. of Marion Co. v. Draper, 491 P.2d 215 (Or.App.1971); Commonwealth ex rel. Mickey v. Mickey, 220 Pa. Super. 39, 280 A.2d 417 (1971); Vigil v. Vigil, 494 P.2d 609 (Colo.App.1972); Laslie v. Cole, 465 S.W.2d 811 (Tex.Civ.App. 1971). However, marriage and other conditions may earlier emancipate a child from his or her status of minority, and thus relieve a parent from the legal obligation of support before the age of majority is attained by the child.

It appears to us, and obviously it appeared to the trial court, that the purpose of the stipulation and the intent of the parties was to fix the amount and the times of payment by plaintiff to defendant of support money for each of their children. It was not intended to lengthen the period of plaintiff's obligation for the support of his children beyond what the law requires of other fathers, or to fix the period of plaintiff's parental control over his children until they became twenty-one years of age, regardless of what the law in this regard might become.

The majority opinion of the North Carolina court in Shoaf v. Shoaf, 14 N.C.App. 231, 188 S.E.2d 19 (1972), arrived at an opposite interpretation of a quite similar contract under a somewhat similar state of facts. However, we are unwilling to apply to the contract before us under the facts of this case the interpretation reached by the North Carolina court.

■■■ Emancipate, in the context in which it is used in the stipulation, means "to release (a child) from the paternal power, making the person released sui juris * * * to set free from the power of another." Webster's Third New International Dictionary, Unabridged (1961). Emancipation is defined as "[a]n act by which a person who was once in the power or under the control of another is rendered free. This is of importance mainly in relation to the emancipation of minors from the parental control. * * *" 1 Bouvier's Law Dictionary, supra. For further definitions of the meaning and discussions of the effect of the emancipation of a child from a parent, see Groh v. W. O. Krahn, Inc., 223 Wis. 662, 271 N.W. 374 (1937); Swenson v. Swenson, 241 Mo.App. 21, 227 S.W.2d 103 (1950).

■■■ Robin and O'Brien were emancipated by the provisions of § 13–13–1, supra,

from their theretofore existing status of minority. Thereupon plaintiff was relieved by the express language of the stipulation from making further support payments to defendant on behalf of these two children.

The order should be affirmed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.