**Certiorari Granted, December 20, 2010, No. 32,695**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-002**

**Filing Date:  September 20, 2010**

**Docket Nos. 30,009 and 30,135 (Consolidated)**

**JHETTE DIAMOND,**

     **Petitioner-Appellee,**

**v.**

**ADRIENNE DIAMOND,**

     **Respondent-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Barbara J. Vigil, District Judge**

Pegasus Legal Services For Children
Peter Klages
Tara Ford
Elizabeth V. McGrath
Albuquerque, NM

for Appellee

Homeless Legal Clinic
Donna J. Lynch
Santa Fe, NM

for Appellant

## OPINION

**VANZI, Judge.**

**{1}**     The central question presented by this case is whether a court may award child support to a minor child who has been emancipated pursuant to the Emancipation of Minors Act (EMA), NMSA 1978, §§ 32A-21-1 to -7 (1995), for the period after emancipation and

continuing until the emancipated minor reaches the age of eighteen. This case is consolidated from two district court cases. In the first case, the district court issued an order emancipating Appellee, Jhette Diamond (Daughter), but reserving Daughter's right to receive child support from her parent. In the second case, the district court ordered Appellant, Adrienne Diamond (Mother), to pay both pre- and post-emancipation child support to Daughter. Mother appeals the district court's award of child support to Daughter.

**{2}** We reverse the district court's grant of post-emancipation child support to Daughter because we determine that New Mexico law does not permit a minor emancipated pursuant to the EMA to collect child support payments. We affirm the district court's grant of pre-emancipation child support to Daughter.

**BACKGROUND**

**{3}** In January 2007, shortly after her sixteenth birthday, Daughter petitioned the district court for emancipation under the EMA. At the time of her petition, Daughter had been living on her own and managing her own finances for approximately three years. Because she was conceived through artificial insemination, Daughter's father is unknown. Daughter stopped living with Mother out of fear for her own safety, after multiple domestic violence incidents between Mother and Mother's boyfriend. At the emancipation hearing, Daughter further testified that she was living separately from Mother, attending high school, maintaining a 4.0 GPA, and working thirty to thirty-five hours per week at a local restaurant.

**{4}** After the presentation of evidence, Daughter's attorney requested that the district court, in addition to ordering Daughter's emancipation, also reserve Daughter's right to child support from her parent. The district court granted Daughter's emancipation petition and, on March 9, 2007, entered an order declaring her to be "an emancipated minor in all respects, except that she shall retain the right to support from her parent." Mother did not appeal the final emancipation order subsequently entered on April 26, 2007. Mother subsequently filed a motion seeking relief from the emancipation order under Rule 1-060(B)(4) NMRA, claiming that the order was void because the district court did not have subject matter jurisdiction under the EMA to reserve Daughter's right to receive child support. When the district court denied this motion, Mother appealed.

**{5}** Meanwhile, almost a year after the emancipation order was entered, Daughter filed a petition for establishment of parentage and collection of child support owed pursuant to the Uniform Parentage Act (UPA), NMSA 1978, §§ 40-11-1 to -23 (1986, as amended through 2004, repealed effective January 1, 2010). The district court found Daughter to be the emancipated minor child of Mother. At a trial on the merits regarding child support, the district court found that Mother had ceased to support Daughter approximately two years prior to Daughter's emancipation. Based on these findings, the court awarded Daughter child support from Mother for the period beginning from the time the court determined Mother had ceased to support Daughter and ending when Daughter graduated from high school, a period of approximately four years that spanned both pre-emancipation and post-

2

emancipation intervals. At the time of the trial on the merits, Daughter was eighteen, had graduated from high school with honors, and had begun attending New Mexico State University. Mother appealed from the district court's award of child support, and we consolidated that appeal with Mother's appeal from the denial of her Rule 1-060(B)(4) motion in the prior emancipation case.

**{6}** Mother argues on appeal that the district court erred when it awarded on-going child support to an emancipated minor under the UPA and that the district court lacked authority to award child support under the UPA because Mother's parentage of Daughter was not in dispute. We determine that the district court was correct in awarding pre-emancipation child support to Daughter under the UPA; however, we determine that the district court erred when it awarded post-emancipation child support pursuant to the UPA. We discuss these two separate categories of child support in turn.

## DISCUSSION

### Standard of Review

**{7}** "The setting of child support is within the trial court's discretion and is reviewed on appeal only for an abuse of that discretion." *Styka v. Styka*, 1999-NMCA-002, ¶ 8, 126 N.M. 515, 972 P.2d 16 (filed 1998). "We will find that a district court has abused its discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Zabolzadeh v. Zabolzadeh*, 2009-NMCA-046, ¶ 4, 146 N.M. 125, 207 P.3d 359 (internal quotation marks and citation omitted). To the extent Mother argues that the district court's denial of her Rule 1-060(B)(4) motion was improper, we review the district court's ruling de novo. *See Classen v. Classen*, 119 N.M. 582, 584-85, 893 P.2d. 478, 480-81 (Ct. App. 1995) (explaining that a court has no discretion in ruling on a motion under Rule 1-060(B)(4) because if a judgment is void, it must be set aside).

**{8}** The present case also requires us to construe both the EMA and UPA statutes. Interpretation of a statute is a question of law which an appellate court reviews de novo. *Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (filed 1997).

### Post-Emancipation Child Support

**{9}** The district court awarded Daughter post-emancipation child support from Mother for the period beginning at Daughter's emancipation and ending when Daughter graduated from high school. Mother first argues that the district court's emancipation order, which reserved Daughter's right to child support, was void because the district court did not have subject matter jurisdiction under the EMA to award child support. We do not agree that the question involves the court's subject matter jurisdiction because our state constitution confers on district courts "original jurisdiction in all matters and causes not excepted in [the] constitution." N.M. Const. art. VI, § 13. *See also Phelps v. Phelps*, 85 N.M. 62, 66, 509 P.2d 254, 258 (1973) (noting that improper application of a statute to facts should not be

confused with the notion of lack of jurisdiction). Instead, the question is whether the district court properly applied the law—under both the EMA and the UPA—to the facts.

{10}     Mother further argues that the district court erred in awarding post-emancipation child support to an emancipated minor. Mother asserts that the UPA, read in concert with the Dissolution of Marriage statutes, NMSA 1978, §§ 40-4-1 to -20 (1901, as amended through 2008) (DM statutes), does not give the district court authority to award child support to an emancipated minor. Mother also argues that, to the extent the district court considered Daughter to be unemancipated for the purposes of collecting child support based on wording in the emancipation order, the court erred because that portion of the emancipation order is void as having no basis in law. We address each of Mother's post-emancipation child support arguments in turn.

### 1.     Uniform Parentage Act (UPA)

{11}     As we discuss in more detail below, we consider Daughter to have been emancipated for all purposes, including the receiving of child support, at the time of the district court's consideration of Daughter's UPA petition. We therefore analyze the district court's award of post-emancipation child support under the UPA as an award of child support to an emancipated minor.

{12}     The purpose of the UPA is to establish the "legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations." Section 40-11-2. The UPA authorizes a court to award past or future support for the child as part of the judgment or order that declares the existence of the parent-child relationship. Section 40-11-15(C). "In determining the amount to be paid by a parent for support of the child, a court, child support hearing officer or master shall make such determination in accordance with the provisions of the child support guidelines [found in the DM statutes]." Section 40-11-15(F).

{13}     The issue of court-ordered child support is addressed by both the UPA and the DM statutes. Where different statutes cover the same subject matter, as in the case of these statutes, we attempt to read those statutes in harmony with each other. *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 23, 128 N.M. 309, 992 P.2d 860.

> In ascertaining legislative intent, the provisions of a statute must be read together with other statutes in pari materia under the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law. . . . Thus, two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals.

*Id.* (emphasis omitted) (internal quotation marks and citation omitted).

{14}     The UPA does not discuss the circumstances in which it is appropriate for a court to award child support; however, the DM statutes provide clear guidelines in this area.

4

Therefore, applying our Supreme Court's direction to read the UPA and the DM statutes in harmony, we look to the DM statutes for guidance in determining whether, under the UPA, an emancipated minor is entitled to receive post-emancipation child support.

{15}     Section 40-4-7(G) of the DM statutes state that "[t]he district court shall have exclusive jurisdiction of all matters pertaining to the guardianship, care, custody, maintenance and education of the children until the parents' obligation of support for their children terminates." Additionally, Section 40-4-7(B)(3) instructs that a court may set aside a parent's property or income for maintenance and education of the parent's "*unemancipated* minor children as may seem just and proper" or, if the minor children are emancipated, "until the children's graduation from high school if the children are emancipated only by age, are under nineteen and are attending high school." *Id.* (emphasis added). Finally, Section 40-4-7(C) provides that a court may order and enforce payment of support for emancipated children only where there is a prior written agreement between the parties to provide such support.

{16}     In interpreting these statutory provisions, our guiding principle is to determine and give effect to the intent of the Legislature. *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. The primary indicator of legislative intent is the plain language of the statute. *Gen. Motors Acceptance Corp. v. Anaya*, 103 N.M. 72, 76, 703 P.2d 169, 173 (1985). Examining the plain language of the DM statutes, we conclude that the Legislature did not intend that a parent's obligation to support her child be extended beyond the emancipation of the child, unless the child is emancipated by age and still attending high school or unless the parties to a marriage dissolution agree in writing to continued support. These are the only circumstances stated in the DM statues under which a parent's support obligation will continue past the child's emancipation. A child emancipated pursuant to an order entered under the EMA does not fit within these circumstances. We, therefore, determine that the district court erred when it awarded child support to Daughter based on Mother's support obligations that the court deemed to have accrued after Daughter's emancipation.

## 2.     Emancipation of Minors Act (EMA)

{17}     Before addressing the merits of Mother's arguments under the EMA, we first consider the impact of the procedural posture of these consolidated appeals. Mother has appealed both the denial of her Rule 1-060(B)(4) motion in the emancipation case and the judgment awarding Daughter child support in the case filed under the UPA. We conclude that the district court properly denied Mother's motion in the emancipation case. Mother's motion was based exclusively on the theory that the emancipation order was void because the district court lacked subject matter jurisdiction. As we have discussed, the district court clearly had jurisdiction to interpret and apply the EMA. The question raised by Mother was whether the district court properly applied the EMA. Consequently, the district court was correct in concluding that its emancipation order was not void.

{18}     We turn now to the judgment in the case filed under the UPA. In that case, the district court found that an award of post-emancipation support was proper under the EMA

5

as well as the UPA. Having concluded that the award was erroneous under the UPA, we consider its propriety under the EMA.

**{19}**    Under the Emancipation of Minors Act, a minor child can be emancipated by court decree if the minor is sixteen years of age or older and is "willingly living separate and apart from his parents, guardian or custodian, is managing his own financial affairs and the court finds it in the minor's best interest." Section 32A-21-4.

**{20}**    In the emancipation case, the district court declared Daughter to be an emancipated minor. However, the district court in the case brought under the UPA effectively found Daughter to be *unemancipated* for the purposes of collecting child support from Mother. To the extent that the district court found that it was "proper to determine and set the amount of support due [after Daughter's emancipation] under the provisions of the [EMA]," we determine the court erred.

**{21}**    Section 32A-21-5 of the EMA states that

> [a]n emancipated minor shall be considered as being over the age of majority for one or more of the following purposes:
>
> A.    consenting to medical, dental or psychiatric care without parental consent, knowledge or liability;
> B.    his capacity to enter into a binding contract;
> C.    his capacity to sue and be sued in his own name;
> D.    his right to support by his parents;
> E.    the rights of his parents to his earnings and to control him;
> F.    establishing his own residence;
> G.    buying or selling real property;
> H.    ending all vicarious liability of the minor's parents . . . ; or
> I.    enrolling in any school or college.

Daughter argues that this section of the EMA allows an emancipating court to pick and choose the purposes for which a child is emancipated. We do not agree. To the extent that the district court based its award of child support on this interpretation of Section 32A-21-5, we conclude that its interpretation is inconsistent with other sections of the EMA and, therefore, it is an inaccurate reading of the statute.

**{22}**    As noted above, our primary goal when interpreting a statute is to give effect to the intent of the Legislature, and we begin this process with the plain meaning of the statute's language. Nevertheless, as our Supreme Court stated in *State v. Trujillo*, 2009-NMSC-012, ¶ 21, 146 N.M. 14, 206 P.3d 125, "such plain meaning does not trump common sense." The Court stated that "if the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, we will reject the plain meaning in favor of an interpretation driven by the statute's obvious spirit or reason." *Id.* (internal quotation marks and citations omitted). Additionally, Section 32A-21-5 must be read in harmony with the other sections of the EMA in order to give full effect to the

6

Legislature's intent. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that where several sections of a statute are at issue, all sections must be read together so that all parts are given effect).

**{23}**     The language of the EMA regarding the purposes of and requirements for emancipation is not a model of clarity. On one hand, the EMA requires that in order to be eligible for emancipation, the minor must be "willingly living separate and apart from his parents [and] managing his own financial affairs." Section 32A-21-4. On the other hand, the statute appears to permit a court to emancipate a minor, but to reserve the minor's right to support from his parents or to reserve for the parent the right to the minor's earnings or the right to control the minor. Section 32A-21-5(D), (E). These sections of the statute, when interpreted in this manner, are paradoxical. A minor cannot be "managing his own financial affairs" if he is subject to his parent's control and is not allowed to retain the wages he has earned. Similarly, a minor cannot be "managing his own financial affairs" if he is receiving financial and other support from his parents.

**{24}**     Section 32A-21-2 sheds light on the legislative intent behind the EMA and provides guidance as to how Sections 32A-21-4 and -5 can be read in a common-sense and consistent manner. Section 32A-21-2 states that "[i]t is the purpose of the [EMA] to provide a clear statement defining emancipation *and its consequences*." (Emphasis added.) Based on the Legislature's stated purpose, a more reasonable reading of Section 32A-21-5 is that the "one or more . . . purposes" section lists the types of benefits and consequences of emancipation under various circumstances, as opposed to offering a menu of options that would effectively result in a partial emancipation and that the statute does not authorize. *See* § 32A-21-7(G) ("A declaration of emancipation granted in accordance with the [EMA] shall be conclusive evidence *that the minor is emancipated*." (emphasis added)). Under this reading of the statute, Section 32A-21-5 illustrates that if a minor is currently receiving child support, one of the consequences of emancipation would be that the minor would no longer receive that support. Similarly, the section explains to the parents and child that, if the parents of a minor had access to the minor's earnings prior to the emancipation, one of the consequences of the minor's emancipation would be that the parent's access to the minor's wages would be terminated. Applying this construction to Section 32A-21-5 permits all sections of the EMA to be congruous and read in harmony with each other.

**{25}**     Our interpretation is also consistent with New Mexico case law in this area. New Mexico courts have long held that a parent has a duty to support his or her children while the children are in their minority. *Mason v. Mason*, 84 N.M. 720, 723, 507 P.2d 781, 784 (1973); *see State ex rel. Terry v. Terry*, 80 N.M. 185, 187, 453 P.2d 206, 208 (1969). However, our Supreme Court has also recognized that "marriage and other conditions may earlier emancipate a child from his or her status of minority, and thus relieve a parent from the legal obligation of support before the age of majority is attained by the child." *Mason*, 84 N.M. at 723, 507 P.2d at 784. In short, our cases provide that when a child has been emancipated, the child occupies the same legal relationship toward the child's parent as if the child had reached full age.

7

**{26}**     We therefore reject the notion as argued by Daughter that the EMA unambiguously confers a right on a fully emancipated minor to child support. The district court's reliance on the EMA to award Daughter child support was in error, and we reverse.

**Pre-Emancipation Child Support**

**{27}**     Pursuant to the UPA, the district court also awarded Daughter retroactive child support from Mother based on Mother's obligation of support for a two-year period prior to Daughter's emancipation. On appeal, Mother argues that the UPA was an improper vehicle for any award of child support because Mother's parentage was not in dispute. We disagree.

**{28}**     In support of her argument, Mother relies on *Zabolzadeh*, in which this Court held that the district court erred when it applied the UPA where the father's paternity had already been judicially acknowledged and adjudicated in a previous court proceeding. *Zabolzadeh*, 2009-NMCA-046, ¶ 5. We believe that *Zabolzadeh* is distinguishable from the present case.

**{29}**     In *Zabolzadeh*, the mother filed suit in California to establish the paternity of her unborn child under California's UPA. The father's paternity was established by court order; however, the court expressly reserved the issue of child support. The mother reestablished contact with the father approximately fifteen years later. The mother then filed a petition in New Mexico, under the New Mexico UPA, requesting that the New Mexico district court modify the California court's order and require the father to pay retroactive child support. On appeal, as a consideration for its ruling, this Court stated that, even in light of New Mexico's strong public policy in favor of child support, to permit the mother to "initiate a UPA proceeding to adjudicate paternity prior to a child's birth and then pursue an award of retroactive child support fifteen years later" would broaden the application of the UPA beyond permissible bounds. *Id.* ¶ 6.

**{30}**     In the present case, unlike *Zabolzadeh*, Mother's parentage of Daughter, while not disputed, had never been judicially acknowledged and adjudicated. Mother argues that her name on the birth certificate and the fact that she was named as Daughter's parent in the emancipation proceeding established her parentage. Section 40-11-4 of the UPA lists the evidence required to establish the parent-child relationship between a child and the natural mother. Section 40-11-4 states that such a relationship may be established "by proof of [the mother] having given birth to the child, or as provided by Section [40-11-21] of the [UPA]." Under Section 40-11-4, Mother's name on Daughter's birth certificate would be evidence that Mother gave birth to Daughter; however, it is not an adjudication of "the legal relationship existing between a child and [her] natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations" as provided for by the UPA. Section 40-11-2.

**{31}**     The version of New Mexico's UPA at issue in the present case and the version currently in effect both contemplate that an adult child may seek retroactive child support for the parent's support obligations accruing prior to the child's reaching the age of majority or emancipation. Sections 40-11-7 to -15; NMSA 1978, § 40-11A-606 (2009). Additionally, this Court has recognized that the UPA is an appropriate vehicle by which an

8

adult or emancipated child may pursue retroactive child support for periods prior to emancipation during which the child was not supported by his or her parent. *See Tedford v. Gregory*, 1998-NMCA-067, ¶ 13, 125 N.M. 206, 959 P.2d 540 (affirming adult daughter's right to recover retroactive child support under the UPA); *State ex rel. Salazar v. Roybal*, 1998-NMCA-093, ¶ 4, 125 N.M. 471, 963 P.2d 548 (affirming adult son's right to recover retroactive child support under the UPA).

**{32}**     Based on testimony and evidence presented at the trial on the merits, the district court found that Mother had stopped providing support to Daughter approximately two years prior to Daughter's emancipation. Both Mother and Daughter testified at trial that at the time Mother's support stopped, Mother had resumed a relationship with a prior boyfriend in which there were frequent episodes of domestic abuse, making it difficult or impossible for Daughter to live with Mother. Both Mother and Daughter's testimony supported the court's finding that Mother did not contribute in any significant way to Daughter's support after Mother reestablished the relationship with the boyfriend.

**{33}**     We conclude that the UPA was an appropriate vehicle for Daughter to petition the district court for a determination of Mother's parentage and retroactive child support for the period prior to Daughter's emancipation. We further hold that the district court did not abuse its discretion in awarding retroactive child support to Daughter.

**CONCLUSION**

**{34}**     For the reasons set forth above, we affirm the order denying Mother's Rule 1-060(B)(4) motion, we reverse the district court's order of post-emancipation child support, affirm the district court's order for pre-emancipation child support, and remand for proceedings consistent with this opinion.

**{35}    IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**

**Topic Index for *Diamond v. Diamond*, Docket Nos. 30,009/30,135**

**AE                APPEAL AND ERROR**
AE-SR                Standard of Review

9

**CD**                **CHILDREN**
CD-CC          Children's Code
CD-EM         Emancipation
CD-UP         Uniform Parentage Act

**DR**                **DOMESTIC RELATIONS**
DR-CT         Child Support

**ST**                **STATUTES**
ST-IP         Interpretation