# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-035

Filing Date: May 2, 2019

No. A-1-CA-37442

STATE OF NEW MEXICO
HUMAN SERVICES DEPARTMENT,
CHILD SUPPORT ENFORCEMENT
DIVISION (CSED), and KANEAN
TOLEDO,

       Petitioners-Appellees,

v.

HOWARD TONEY, JR.,

       Respondent-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
Cheryl H. Johnston, District Judge

Certiorari Denied, June 25, 2019, No. S-1-SC-37701. Released for Publication July 23, 2019.

New Mexico Legal Aid, Inc.
Kathryn Suzanne Almond
Simon Tuck
Bernalillo, NM
Edna Frances Sprague
Albuquerque, NM

for Appellee Kanean Toledo

New Mexico Human Services Department
Child Support Enforcement Division
Sarah J. Batzli
Larry Heyeck
Kristin Sanderson
Santa Fe, NM

for Appellee Human Services Department

Titus and Murphy Law Firm
Tyson K. Gobble
Farmington, NM

for Appellant

**OPINION**

**IVES, Judge.**

**{1}** The district court ordered Howard Toney (Father) to pay child support retroactive to the date of his separation from Kanean Toledo (Mother) pursuant to the New Mexico Uniform Parentage Act (NMUPA), NMSA 1978, §§ 40-11A-101 to -903 (2009).[1] Father argues that the NMUPA's retroactive child support provision, § 40-11A-636(G), does not apply to him because he acknowledged paternity before Mother and the Child Support Enforcement Division (CSED) petitioned for child support. We disagree and affirm.

**BACKGROUND**

**{2}** In 2005, when she was fifteen years old, Mother gave birth to a daughter. Mother and Father were not married when their daughter was born, and Father executed an acknowledgement of paternity. The couple lived together off and on and then separated in 2006. Father only paid Mother child support in 2011 and 2012.

**{3}** Mother assigned her right to child support to the State because it had provided assistance to the child. *See generally* NMSA 1978, § 27-2-28 (2009). In August of 2016, CSED filed a petition on behalf of Mother and the State seeking child and medical support from Father.

**{4}** By stipulated order, the district court directed Father to make monthly payments to Mother for ongoing child and medical support. After considering the parties' legal arguments and testimony, a child support hearing officer concluded that the NMUPA applied and recommended that the district court order Father to pay child support retroactive to his separation from Mother in 2006.

**{5}** Father objected to this recommendation, arguing that Section 40-11A-636(G) did not apply because he had previously acknowledged paternity. Father asserted that he was therefore not responsible for any child support from the time of his daughter's birth in 2005 through the filing of the petition in August 2016.

**{6}** The district court overruled the objection and adopted the hearing officer's recommendation, concluding that the NMUPA applied and authorized an order of support retroactive to the date of the couple's separation. Father appeals.

---

1 The NMUPA came into effect on January 1, 2010, replacing its simultaneously-repealed predecessor statute, the Uniform Parentage Act, NMSA 1978, § 40-11-1 to -23 (1986, as amended through 2004).

## DISCUSSION

### Standard of Review

**{7}**     "We review the setting of child support orders for abuse of discretion." *Zabolzadeh v. Zabolzadeh*, 2009-NMCA-046, ¶ 4, 146 N.M. 125, 207 P.3d 359. It is an abuse of discretion for a district court to base a discretionary decision on or apply an incorrect standard or incorrect substantive law. *Id.* Father challenges the district court's interpretation of the NMUPA, an issue of statutory construction we review de novo. *Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405.

### The NMUPA

**{8}**     To "ascertain the legislative intent" behind the NMUPA, we "begin with [its] plain language." *N.M. Indus. Energy Consumers v. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 21, 142 N.M. 533, 168 P.3d 105. "Because we consider statutes in the context of the broader act in which they are situated, we read them in conjunction with statutes addressing the same subject matter, ensuring a harmonious, common-sense reading." *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. Our interpretations must "facilitate [the statute's] operation and the achievement of [its] goals." *Padilla v. Montano*, 1993-NMCA-127, ¶ 23, 116 N.M. 398, 862 P.2d 1257. We "consider the practical implications" of potential interpretations, *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361, rejecting those that "defeat [the statute's] intended purpose[,]" *Padilla*, 1993-NMCA-127, ¶ 23.

**{9}**     The NMUPA governs the "determination of parentage[,]" § 40-11A-103(A), which is "the establishment of the parent-child relationship[,]" § 40-11A-102(H), "the legal relationship" between a parent and child, § 40-11A-102(N). The NMUPA provides two legal mechanisms for determining parentage: (1) "the signing of a valid acknowledgment of paternity" and (2) "adjudication by the court[.]" Section 40-11A-102(H).

**{10}**   In contrast to an adjudication of parentage, which involves a judicial proceeding generally governed by our rules of civil procedure, § 40-11A-601, the execution of an acknowledgment of paternity under the NMUPA is a relatively simple, inexpensive,[2] and informal process. To execute an acknowledgment, "[t]he mother of a child and a man claiming to be the genetic father [must] sign an acknowledgment of paternity with intent to establish the man's paternity." Section 40-11A-301. Their signatures must be under penalty of perjury and on a form provided by the Bureau of Vital Records and Health Statistics. Section 40-11A-302(A)(1)-(2); *see also* § 40-11A-102(E). The acknowledgment must contain various statements indicating that the acknowledging signatory is indeed the child's father and notifying the signatories of the legal effects of the acknowledgment, § 40-11A-302(A), and it is void if it states or falsely denies that a

---

2 The NMUPA explicitly prohibits the Bureau of Vital Records and Health Statistics from charging a fee for the filing of an acknowledgment of paternity. Section 40-11A-306.

different man is the child's acknowledged, adjudicated, or, in most cases, presumed father.[3] Section 40-11A-302(B).

**{11}** An acknowledgment of paternity satisfying the requirements described above and filed with the bureau "is equivalent to an adjudication of paternity of a child[,]" § 40-11A-305(A), and is binding on all signatories, § 40-11A-637(A)(1), with two exceptions. The NMUPA allows signatories to avoid an acknowledgment's legal consequences through rescission and challenge, both of which involve judicial proceedings governed by the same rules that govern adjudication of paternity. *See* § 40-11A-305(A) (providing that a valid acknowledgment is equivalent to an adjudication except as provided in the rescission and challenge statutes); § 40-11A-307 (providing for rescission); § 40-11A-308 (providing for challenge within two years based on fraud, duress, or material mistake of fact); § 40-11A-309 (describing procedure for rescission or challenge); § 40-11A-309(D) (providing that proceedings for rescission and challenge "shall be conducted in the same manner as a proceeding to adjudicate parentage").

**{12}** The NMUPA also provides for proceedings to enforce the obligations arising from the parent-child relationship. "[A]ny interested party" may enforce "the obligation of the noncustodial parent" if "existence of the parental relationship is declared, or paternity or a duty of support has been acknowledged or adjudicated under the [NMUPA] or under prior law[.]" Section 40-11A-639(A). A custodial parent or any other interested party may enforce a noncustodial parent's duty to pay child support by timely initiating a "proceeding to adjudicate child support." Section 40-11A-607(A).

**{13}** District courts have broad remedial authority in enforcement proceedings. Our Legislature did not cabin their powers to the entry of orders adjudicating paternity pursuant to Section 40-11A-636(A). Rather, under Section 40-11A-636(G), courts may also enter judgments and orders addressing a wide array of common issues involving parents and children—including orders requiring noncustodial parents to fulfill their "duty of past and future support[.]" Subsection (G) states, in relevant part:

> The court shall order child support retroactive to the date of the child's birth, but not to exceed twelve years unless there is a substantial showing that paternity could not have been established and an action for child support could not have been brought within twelve years of the child's birth pursuant to the provisions of Sections 40-4-11 through 40-4-11.3 NMSA 1978; provided that, in deciding whether or how long to order retroactive support, the court shall consider:
>
>     (1)     whether the alleged or presumed father has absconded or could not be located; and

---

3 The NMUPA defines "presumed father" as "a man who, by operation of law pursuant to Section [40-11A]-204 . . . is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding[.]" Section 40-11A-102(P).

        (2)     whether equitable defenses are available.[4]

*Id.*

## Application of the NMUPA to Father

**{14}** We believe the district court's application of the NMUPA's retroactive support provision to Father is consistent with the plain language, structure, and purpose of the NMUPA. By filing a timely petition, CSED sought to enforce "the obligation of the noncustodial parent,"[5] § 40-11A-639(A), through a "proceeding to adjudicate child support" under Section 40-11A-607. The petition included the undisputed allegation that Father is the child's father, which in turn rested on Father's acknowledgement of paternity. No party challenged the acknowledgement based on allegations of fraud, duress, material mistake of fact, or genetic testing. *See generally* §§ 40-11A-308, -309, -631(A). Properly treating the unchallenged acknowledgement as the functional equivalent of an adjudication of paternity, the district court exercised its remedial authority under Section 40-11A-636(G). The court considered the parties' arguments and testimony regarding Father's child support obligations. It then directed Father to fulfill his duty "of past and future support," *id.*, ordering him to pay retroactive to when Father and Mother separated. In our view, the court's actions were well within its authority under the NMUPA and therefore were not an abuse of discretion.

**{15}** Father sees this differently. He argues that the NMUPA's retroactivity provision—which on its face is generally applicable—does not apply to him because he acknowledged paternity before CSED filed the petition. Father relies heavily on a pair of cases in which fathers sought to be exempted from the UPA's retroactive child support provision: *Sisneroz v. Polanco*, 1999-NMCA-039, 126 N.M. 779, 975 P.2d 392, and *Zabolzadeh v. Zabolzadeh*, 2009-NMCA-046, 146 N.M. 125, 207 P.3d 359. But neither case dictates the holding Father seeks. The issue in *Sisneroz* was "whether the UPA applie[d] to fathers who do not deny paternity of their children but never formally acknowledge their paternity or assume legal responsibility for their support." 1999-NMCA-039, ¶ 6. Rejecting the father's request for an exemption, we held that the UPA authorized retroactive support. *See id.* ¶ 10. In *Zabolzadeh*, the issue was whether the UPA authorized retroactive support in a proceeding brought in New Mexico twelve years after a California court had adjudicated paternity based on a stipulation by the mother and father. 2009-NMCA-046, ¶¶ 1-4. In the particular circumstances of that case, we reversed the award of retroactive child support, finding error in the district court's adjudication of paternity "for the second time when [the f]ather's paternity had already

---

4 The quoted provision of Section 40-11A-636(G) is unique to New Mexico. It was not part of the model legislation from which our Legislature derived certain other provisions of the NMUPA and its predecessor. Nor does this language appear in a statute in any other state.

5 Although there may be temporal limitations on awards of retroactive support beyond those explicitly provided for in Section 40-11A-607, the NMUPA's statute of limitations, *see* § 40-11A-636(G)(2) (providing for equitable defenses to the award of retroactive support); *cf. Zabolzadeh*, 2009-NMCA-046, ¶ 6, we express no opinion on their applicability in cases where, as here, there has been no prior adjudication of parentage.

been judicially acknowledged and adjudicated in the California court." *Id.* ¶ 5; *see id.* ¶¶ 6-7.

**{16}**     After *Sisneroz* and *Zabolzadeh*, we addressed a mother's request for an exemption from the UPA's retroactive child support provision in *Diamond v. Diamond*, 2011-NMCA-002, 149 N.M. 133, 245 P.3d 578, *rev'd on other grounds*, 2012-NMSC-022, 283 P.3d 260. There, we rejected the mother's argument "that the UPA was an improper vehicle for any award of child support because [her] parentage was not in dispute." *Id.* ¶ 27. We explained that, in *Zabolzadeh*, "[t]he father's paternity was established by court order" in California years before the mother petitioned for retroactive child support in New Mexico. *Diamond*, 2011-NMCA-002, ¶ 29. We then distinguished *Zabolzadeh*, reasoning that "[i]n the present case . . . [the m]other's parentage of [the d]aughter, while not disputed, had never been judicially acknowledged and adjudicated." *Diamond*, 2011-NMCA-002, ¶ 30. Accordingly, we concluded in *Diamond* that the UPA was an "appropriate vehicle" for determination of parentage and retroactive child support.[6] *Id.* ¶ 33.

**{17}**     Like *Diamond*, Father's case is distinct from *Zabolzadeh*. Just as the parentage of the mother in *Diamond* was not judicially acknowledged and adjudicated before the UPA proceedings were initiated, Father's parentage was not judicially acknowledged and adjudicated at any time before CSED filed its petition in 2016. Father does not contend otherwise.

**{18}**     Instead, Father asks us to expand the narrow exemption we recognized in *Zabolzadeh* so that it includes all fathers who acknowledge paternity through the informal procedures in the NMUPA before they are named as respondents in an enforcement proceeding. Father argues that he enjoys an exemption from the NMUPA's retroactive support provision because he previously acknowledged paternity. Under Father's theory, an acknowledgement of paternity executed before a petition for support is filed should have the same preclusive effect as an adjudication of parentage entered by a court before a support petition is filed.

**{19}**     Whether Father's argument has merit turns on the meaning of Section 40-11A-305(A), which states: "Except as otherwise provided in Sections [40-11A]-307 and [40-11A]-308[,] . . . a valid acknowledgement of paternity filed with the bureau is equivalent to an adjudication of paternity of a child." In discerning the legislative intent behind this equivalency provision, we consider its plain language in light of its "function within [the] comprehensive legislative scheme" of the NMUPA, including the enforcement and remedial provisions governing proceedings to adjudicate child support. *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939. "Equivalent" means "like in signification or import" or "corresponding or virtually identical especially in effect or

---

[6] *Sisneroz*, *Zabolzadeh*, and *Diamond* involved two different versions of the UPA. *See Diamond*, 2011-NMCA-002, ¶ 5 (applying UPA as amended through 2004); *Zabolzadeh*, 2009-NMCA-046, ¶ 1 (same); *Sisneroz*, 1999-NMCA-039, ¶ 1 (applying the UPA as amended through 1997). No party invites us to revisit the holdings or reasoning of *Sisneroz*, *Zabolzadeh*, and *Diamond* in light of the changes that came with the NMUPA, and we need not do so to resolve Father's appeal.

function." *Equivalent*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/equivalent (last updated Apr. 7, 2019); *accord Equivalent*, *Black's Law Dictionary* (9th ed. 2009) (defining term as "[e]qual in . . . force, . . . effect, or significance" or "[c]orresponding in effect or function"). Accordingly, to determine the meaning of the equivalence between adjudications and acknowledgments of paternity, we focus on the effect, function, and import of the competing interpretations in the child support context.

**{20}** Under Father's reading of the equivalency language in Section 40-11A-305(A), adjudication and acknowledgement would have opposite effects and functions. Despite its mandate that they be treated "equivalently," the NMUPA would prohibit retroactive support when paternity is acknowledged and allow it when paternity is adjudicated. We have found nothing in the NMUPA to suggest that our Legislature intended for the two legally equivalent mechanisms of establishing paternity to have opposite effects on children, parents, and the state. We therefore reject Father's interpretation of the equivalency provision and decline his invitation to exempt acknowledged fathers from the NMUPA remedy of retroactive support.[7]

**{21}** Instead, we hold that the NMUPA authorizes district courts to order retroactive support when an acknowledgement of paternity has established the parent-child relationship. Our holding rests on the plain meaning of the equivalency provision and our understanding of the NMUPA's structure and purpose. We begin where a district court begins its analysis of a petition for child support: the threshold question of whether paternity is contested or uncontested. When paternity is contested, the NMUPA requires the court to adjudicate paternity before it adjudicates child support. The existence of an acknowledgement of paternity does not necessarily mean that paternity will be uncontested. When someone challenges an acknowledgement, the court must adjudicate paternity. *See* §§ 40-11A-308, -309(D), -636(A). If, at the end of the adjudicatory process, the court finds paternity, it proceeds to the remedial phase, which entails application of the child support provisions of Section 40-11A-636(G) to the facts of the case before it.

**{22}** An unchallenged acknowledgement of paternity, such as the one at issue in Father's appeal, gives the parties and the courts a dramatically shorter path to the same destination: the child support remedies in Section 40-11A-636(G). When an

---

[7] The parties discuss our calendar notice and summary disposition in *State ex rel. Human Services Department v. Kindred*, No. 33,541, mem. op. (N.M. Ct. App. July 1, 2014) (non-precedential), in which we reversed the district court's award of retroactive support. In our notice of proposed summary disposition, we indicated, as Father argues here, that the NMUPA's retroactivity provision does not apply when a father has acknowledged paternity before judicial proceedings regarding paternity or child support begin. We "suggest[ed] that the basis for distinguishing *Zabolzadeh* that existed in *Diamond*"—the lack of a "judicial[] acknowledge[ment] and adjudica[tion]" of parentage, *Diamond*, 2011-NMCA-002, ¶ 30—was inapplicable because the NMUPA's equivalency provision "equates an acknowledgment . . . to an adjudication of paternity[.]" We therefore proposed "rel[iance] on *Zabolzadeh*" in reasoning that the NMUPA did not apply because paternity was not in dispute. Our ensuing memorandum opinion noted that "[n]o memorandum opposing summary reversal ha[d] been filed, and the time for doing so ha[d] expired." *Kindred*, No. 33,541, mem. op. ¶ 1. Having now considered the issue with the benefit of full briefing, which we did not have in *Kindred*, we resolve the issue differently for the reasons we explain in the text of this opinion.

acknowledgement goes unchallenged, paternity is uncontested, and the court moves directly to the determination of remedies. The only remaining step is to enforce the father's duty of support by entering a judgment or order, which may include a provision requiring "retroactive" or "past" support. Section 40-11A-636(G). The acknowledgement shortcut obviates the need for further proceedings regarding paternity.[8] *See* § 40-11A-201(B)(2) ("The father-child relationship is established [by] an effective acknowledgment of paternity . . . unless the acknowledgment has been rescinded or successfully challenged[.]").

**{23}**　An unchallenged acknowledgement conclusively establishes paternity, just as the court's adjudication of paternity would have if a party had contested paternity. In other words, "a valid acknowledgement of paternity . . . is equivalent to an adjudication of paternity." Section 40-11A-305(A). Because they are equivalents, both a valid acknowledgement of paternity and an adjudication of paternity authorize a court to order child support, including retroactively. Valid acknowledgements have the same function and effect as adjudications in the child support adjudication process.

**{24}**　Our holding today advances the Legislature's goal of broadly applying the NMUPA to ensure that it serves its important purposes, unhindered by overly technical application of provisions designed to ensure that all parents contribute equitably to their children's financial support. Our Supreme Court has recognized that "the Legislature clearly intended that the UPA have broad application." *Chatterjee v. King*, 2012-NMSC-019, ¶ 7, 280 P.3d 283 (internal quotation marks omitted).[9] Our courts must therefore read the statute in light of the goals the Legislature sought to achieve, *see id.* ¶¶ 33-34, including protecting "the interest that children have in their own support." *Id.* ¶ 33. Were we to adopt Father's position and recognize a categorical exemption from the NMUPA for acknowledged fathers, children would be deprived of important resources they are entitled to from birth. This would undermine a key legislative goal and violate an overarching command of our family law jurisprudence: "in every proceeding in which minor children are involved, a court's primary obligation is to further the best interests of the child." *Wasson v. Wasson*, 1978-NMCA-092, ¶ 4, 92 N.M. 162, 584 P.2d 713; *see Chatterjee*, 2012-NMSC-019, ¶ 37 ("[T]he child's best interests are served when intending parents physically, emotionally, and financially support the child from the time the child comes into their lives."); *Wallis v. Smith*, 2001-NMCA-017, ¶ 10, 130 N.M. 214, 22 P.3d 682 ("Making each parent financially responsible for the conception and birth of children . . . illuminates a strong public policy that makes paramount the interests of the child.").

**{25}**　A judicially crafted exemption for acknowledged fathers would also harm the person who has custody of the child—often the mother—by requiring that person to shoulder more than her or his fair share. *See Sisneroz*, 1999-NMCA-039, ¶ 15 ("Retroactive child support is for the benefit of a child as well as for that child's

---

8 Despite the informal nature of acknowledgment execution, the court may not even "ratify" an unchallenged acknowledgement. Section 40-11A-310.

9 Although *Chatterjee* interpreted the NMUPA's predecessor, nothing in the NMUPA gives us any reason to believe that our Legislature intended for the NMUPA to apply more narrowly than the UPA.

custodian."). All parents have a duty to support their children starting at birth. *See Stringer v. Dudoich*, 1978-NMSC-071, ¶ 7, 92 N.M. 98, 583 P.2d 462 ("A child has the right of support from his parents whether or not he is in their custody."); *Mintz v. Zoernig*, 2008-NMCA-162, ¶ 15, 145 N.M. 362, 198 P.3d 861 (recognizing that "a natural father is required to support his children" and that child support is a parent's most important obligation). The NMUPA codifies this duty for both acknowledged and adjudicated fathers. Acknowledging paternity is a way for a father to accept his share of financial responsibility for a child, not to shift responsibility to the mother or another custodian.

**{26}** In addition, Father's requested exemption would harm the state, which "has a strong interest in ensuring that a child will be cared for, financially and otherwise, by two parents" because the state "ultimately assume[s] the responsibility of caring for the child." *Chatterjee*, 2012-NMSC-019, ¶ 32. Indeed, protecting this state interest was "one of the primary reasons that the original UPA was created," and, as our Supreme Court has recognized, "it makes little sense to read the statute without keeping this overarching legislative goal in mind." *Id.* Father's reading of the NMUPA would undermine this goal.

**{27}** Father's reading would also undermine the goal of encouraging parents to choose the simpler, faster, and less expensive mechanism for determining paternity: acknowledgement. The NMUPA requires the signature of *both* parents for an acknowledgment of paternity to be valid. Sections 40-11A-301, -302(A)(2**)**. Custodial parents would have a powerful incentive to withhold their signatures were we to hold, as Father urges, that signing an acknowledgment precludes retroactive support.

**{28}** Even if we identified significant ambiguity in the NMUPA's relevant provisions, which we do not, we would reject Father's proposed holding because it would lead to "absurd [and] unjust" results. *In re Portal*, 2002-NMSC-011, ¶ 5, 132 N.M. 171, 45 P.3d 891 (internal quotation marks and citation omitted). A fundamental principle of our family law jurisprudence is that children should not "be penalized because of the decisions that their parents make[.]" *Chatterjee*, 2012-NMSC-019, ¶ 33; *see Padilla v. Montano*, 1993-NMCA-127, ¶ 31, 116 N.M. 398, 862 P.2d 1257 (interpreting the UPA to prevent the child from being punished for the mother's "failure to pursue a [claim] for paternity and support during [the c]hild's minority"). Father's proposed exemption would violate this principle by depriving certain children of financial support based on the action or inaction of their parents. An exemption would unjustly penalize children whose fathers acknowledge paternity but fail to support their children and whose mothers (or other custodians or interested parties) do not immediately petition for child support. Every such child would be deprived of support for all of the time between the father's acknowledgement and the filing of the petition, regardless of the circumstances.

**{29}** We can imagine numerous hypothetical situations that illustrate the injustice and absurdity of such an approach. We offer two. Consider first a child whose unmarried father and mother acknowledge paternity when the child is born. The father then fails to provide financial support. Due to a serious illness the mother suffers shortly after the

child's birth, she is unable to petition for support for six months. Under Father's proposed holding, the child would be deprived of the father's support for six months, and the mother (and perhaps the State) would bear the burden of supporting the child during that time.

**{30}** Comparing this hypothetical situation to a similar one further confirms the illogic of exempting fathers who have acknowledged paternity. The facts are the same as those described above—with one exception. The father does not acknowledge paternity. Instead, after the mother recovers from her illness, she successfully petitions for an adjudication of paternity. Under Father's proposed interpretation of the NMUPA, a court could order support for this child retroactive to his or her birth but could not order the same support for the child whose father previously acknowledged paternity. We do not believe the NMUPA arbitrarily draws consequential lines between groups of children, making each child's financial support depend on whether or not the child's father chooses to acknowledge paternity before the child's mother chooses to initiate judicial proceedings.[10] *See Chatterjee*, 2012-NMSC-019, ¶ 33 (recognizing that children should not be penalized for their parents' choices).

**{31}** Other arbitrary results would flow from Father's proposed holding. Children whose parents unsuccessfully attack an acknowledgment of paternity would be entitled to retroactive support, but children whose parents execute but do not attack an acknowledgment would not. The NMUPA provides two methods a signatory may use to attack an acknowledgement of paternity to avoid its legal effects: rescission, § 40-11A-307, and challenge, § 40-11A-308. Both methods involve judicial proceedings that "shall be conducted in the same manner as a proceeding to adjudicate parentage." Section 40-11A-309(D). And, as Section 40-11A-636(A) provides, proceedings to adjudicate parentage produce orders adjudicating parentage. It follows that Section 40-11A-636 applies when a party attacks an acknowledgement, whether by rescission or challenge. When an attack fails, and a court determines that an acknowledgment is binding, the court is authorized to enter an order adjudicating a signatory to be the father, an order that under Section 40-11A-636(G) could be accompanied by an order for retroactive support. Father's reading would thus authorize retroactive support for children whose parents acknowledge paternity and later launch failed attacks, but prohibit it for children of parents who execute an acknowledgement and never attack it. Surely the Legislature did not intend to draw such an arbitrary, unjust distinction.

---

10 Our interpretation of the NMUPA's retroactivity provision avoids the constitutional questions and potential statutory discord that troubled the district court. *See Chatterjee*, 2012-NMSC-019, ¶ 18 (interpreting UPA broadly "to avoid an interpretation . . . that would raise constitutional concerns"); *State v. Smith*, 2004-NMSC-032, ¶ 13, 136 N.M. 372, 98 P.3d 1022 ("[O]ur task is to construe statutes in harmony whenever possible."). Concluding that the NMUPA deprives certain children of retroactive support would raise equal protection questions. *See* U.S Const. amend. XIV, § 1; N.M. Const. art. II, § 18. It would also raise questions under the NMUPA's equal rights provision, Section 40-11A-202. *See id*. ("A child born to parents who are not married to each other has the same rights pursuant to the law as a child born to parents who are married to each other."). We need not answer those questions to decide Father's appeal.

**{32}** Father's final argument is that applying the NMUPA's retroactive support provision to fathers who have previously acknowledged paternity, as he did, would be inequitable because it would reward mothers and other custodians who fail to promptly petition for child support, as he claims Mother did. But applying the NMUPA's retroactive support provision does not prohibit parents from presenting equitable arguments like Father's. On the contrary, under the NMUPA, "in deciding whether or how long to order retroactive support, the court shall consider[,]" among other things, "whether equitable defenses are applicable." Section 40-11A-636(G). Instead of categorically forbidding or categorically requiring retroactive support, the NMUPA calls for a case-by-case approach to retroactive support issues, including consideration of any equitable defenses.

**{33}** Adhering to the NMUPA's provisions, the district court gave Father the opportunity to present his equitable argument. The district court weighed the parties' competing arguments and evidence about whether Mother's actions constituted waiver, including Mother's testimony about her efforts to locate Father for the purpose of seeking child support and the parties' conflicting testimony about whether Mother ever asked Father to stop paying child support.[11] The court then made a case-specific decision about whether to order retroactive support, as the NMUPA requires.

**CONCLUSION**

**{34}** We affirm the district court's order requiring Father to pay retroactive child support. We remand for further proceedings consistent with this opinion.

**{35}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**

---

11 Neither CSED nor Mother questioned whether waiver is a viable defense. *See generally Webb v. Menix*, 2004-NMCA-048, ¶¶ 4-11, 135 N.M. 531, 90 P.3d 989 (discussing two kinds of common-law waiver in the child support context); *Sisneroz*, 1999-NMCA-039, ¶ 11 (declining to rule on mother's argument "that she could not bind her child to a waiver of retroactive child support without court appointment of a guardian ad litem and some measure of judicial approval").